Argued January 19, affirmed April 19, 1961

# RODGERS ET UX *v.* REIMANN ET UX

361 P. 2d 101

*Roland F. Banks, Jr.,* Portland, argued the cause for appellants. With him on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

*J. Ray Rhoten,* Salem, argued the cause for respondents. On the brief were Rhoten, Rhoten & Speerstra, Salem.

64

O'CONNELL, J.

This is a suit in equity to enforce a building restriction contained in a land sale contract under which defendants were purchasers of a lot in the city of Salem, Oregon.

Defendants own the restricted lot, hereafter referred to as Lot 11, which abuts Kingwood drive on the east. The lot owned by plaintiffs abuts Kingwood drive on the west, directly across the street from Lot 11. Plaintiffs purchased their lot from Dr. and Mrs. Lebold on January 31, 1957. We shall refer to plaintiffs' parcel as the Lebold lot. At the time plaintiffs purchased the Lebold lot, Mr. and Mrs. Willett owned the lot adjoining the Lebold lot on the north. At that time also, the Lebolds and the Willetts owned Lot 11. On December 15, 1959 the Lebolds and the Willetts joined together to convey Lot 11 under a land sale contract to the defendants. The contract contained the following covenant:

> "That no dwelling house shall be constructed on said real premises the floor level of which shall be more than one foot higher than the street curb of Kingwood Drive adjacent to said real premises."

Soon after defendants entered into the contract for the purchase of Lot 11 they commenced construction of a dwelling house on the lot. Plaintiffs brought this suit to enjoin the construction of the dwelling house allegedly in violation of the covenant. The trial court entered a decree dismissing plaintiffs' complaint, from which decree plaintiffs appeal.

To be entitled to enforce the covenant plain-

tiffs must show that the building restrictions imposed
upon Lot 11 were intended to benefit them as the own-
ers of the Lebold lot and that defendants entered into
the covenant with notice that the covenant was to have
this effect. *Hall v. Risley and Heikkila,* 188 Or 69, 96-
97, 213 P2d 818 (1950); *O'Malley v. Central Methodist
Church,* 67 Ariz 245, 194 P2d 444, 449 (1948); *Doerr
v. Cobbs,* 146 Mo App 342, 123 SW 547, 550 (1909);
*Vogeler v. Alwyn Improvement Corporation,* 247 N Y
131, 159 NE 886, 887 (1928); *Cheatham v. Taylor,* 148
Va 26, 138 SE 545, 547 (1927). See, *Duester v. Alvin,*
74 Or 544, 551-552, 145 P 660 (1915). The plaintiffs
have the burden of proof in establishing these facts,
*Hays v. St. Paul M.E. Church,* 196 Ill 633, 63 NE
1040, 1041-1042 (1902); *Clem v. Valentine,* 155 Md 19,
141 A 710, 712 (1928); *Lovell v. Columbian Natl. Life
Ins. Co.,* 294 Mass 473, 2 NE2d 545, 547 (1936); *Lowell
Institution for Savings v. City of Lowell,* 153 Mass
530, 27 NE 518 (1891); *Cejka v. Korn,* 127 SW2d 786,
789 (Mo App 1939); *Wright v. Pfrimmer,* 99 Neb
447, 156 NW 1060, 1063 (1916); *Sailer v. Podolski,*
82 N J Eq 459, 88 A 967, 968 (1913); *Rowe v. May,*
44 N M 264, 101 P2d 391, 393 (1940); 2 American
Law of Property (1952), § 9.29, p. 415-416, and to
carry that burden they must overcome the construc-
tional preference against restrictions limiting the use
of land. *Schmitt v. Culhane,* 223 Or 130, 354 P2d
75, 76 (1960); *Hall v. Risley and Heikkila,* 188 Or 69,
87-88, 213 P2d 818 (1950); *Crawford et al v. Senosky
et al,* 128 Or 229, 232, 274 P 306 (1929); *Grussi v.
Eighth Ch. of Christ, Scientist,* 116 Or 336, 342, 241
P 66 (1925); *Scott Co. v. Roman Catholic Archbishop,*
83 Or 97, 105, 163 P 88 (1917); Note, Property-
Restrictive Covenants-Right of Prior Grantee Under
Common Grantor to Enforce Covenants in Deed to

Subsequent Grantee, 38 Yale L J 827, 828 (1929). Cf., *McMahon v. Williams*, 79 Ala 288, 291 (1885); *Bauby v. Krasow*, 107 Conn 109, 139 A 508, 510, 57 ALR 331 (1927); *Heisler v. Marceau*, 95 Fla 135, 116 So 447, 448 (1928); *Wardlaw v. Southern Ry. Co.*, 199 Ga 97, 33 SE2d 304, 305-306 (1945); *Peck v. Conway*, 119 Mass 546, 549 (1876); *Ball v. Milliken*, 31 R I 36, 76 A 789, 795 (1910), rehearing denied, 78 A 625; 2 American Law of Property (1952), § 9.29, p. 416.

■ However, the intention to benefit a particular parcel of land through the imposition of the restrictions on the land conveyed need not be expressly recited in the contract or deed. *Herb v. Gerstein*, 41 F Supp 634, 635 (D C 1941); *Wardlaw v. Southern Ry. Co.*, 199 Ga 97, 33 SE2d 304, 305-306; *Waterhouse v. Capital Investment Co.*, 44 Hawaii 235, 289, 311, 353 P2d 1007, 1009, 1013 (1960); *Wischmeyer v. Finch*, 231 Ind 282, 107 NE2d 661, 665 (1952); *Rieger v. Wessel*, 319 SW2d 855, 857-858 (Ky 1958); *Scholtes v. McColgan*, 184 Md 480, 41 A2d 479, 483-484 (1945); *Clem v. Valentine*, 155 Md 19, 141 A 710, 712 (1928); *Baker v. Seneca*, 329 Mass 736, 110 NE2d 325, 327 (1953); *Snow v. Van Dam*, 291 Mass 477, 197 NE 224, 226-228 (1935); *Lowell Institution for Savings v. City of Lowell*, 153 Mass 530, 27 NE 518, 519 (1891); *Doerr v. Cobbs*, 146 Mo App 342, 123 SW 547, 550 (1909); *Anderson v. Marshall-Malaise Lumber Co.*, 66 N D 216, 263 NW 721, 723 (1935); *Johnson v. Shaw*, 101 N H 182, 137 A2d 399, 402 (1957); *Semple v. Clark*, 132 Misc 903, 230 NYS 738, 740-741 (1928); *Ridley v. Haiman*, 164 Tenn 239, 47 SW2d 750, 753 (1932). Contra: *Werner v. Graham*, 181 Cal 174, 183 P 945, 948, 949 (1919); *Renals v. Cowlishaw*, LR 11 Ch 866, 868-869 (1879), affirming L R 9 Ch 125 (1878).

It is not reasonable to presume that building re-

strictions such as we are concerned with here are intended simply for the personal benefit of the vendors. *Bauby v. Krasow,* 107 Conn 109, 139 A 508, 510, 57 ALR 331 (1927); *Baker v. Lunde,* 96 Conn 530, 114 A 673, 676-677 (1921); *Hegna v. Peters,* 199 Iowa 259, 266, 201 NW 803 (1925); *Welch v. Austin,* 187 Mass 256, 72 NE 972, 973 (1905); *Peck v. Conway,* 119 Mass 546, 549 (1876); *DeGray v. Monmouth Beach Club House Co.,* 50 N J Eq 329, 342, 24 A 388 (1892); *Clark v. Martin,* 49 Pa 289, 297-298 (1865). Cf., *McMahon v. Williams,* 79 Ala 288, 291 (1885); *Wardlaw v. Southern Ry. Co.,* 199 Ga 97, 33 SE2d 304, 305-306, 308 (1945); *Ball v. Milliken,* 31 R I 36, 76 A 789, 795, rehearing denied, 78 A 625 (1910). Rather it is reasonable to presume that the covenant in the case at bar was intended to benefit at least the land which was retained by the Willetts at the time they joined with the Lebolds in conveying Lot 11.

■■ It is somewhat more difficult to assume that such a covenant is intended to benefit a prior grantee of the vendor, or, as in this case, the prior grantee of one of the two co-grantors. Where the restrictions are a part of a general building plan the courts generally recognize that a prior purchaser from the covenantee can enforce the covenants subsequently entered into between his grantor and subsequent grantees. 2 American Law of Property (1952), § 9.30; 5 Restatement, Property, Servitudes (1944), Intr. Note, Ch 46, p. 3244, and § 541, Comment f. If the covenants touch and concern the land previously conveyed out of an area subdivided pursuant to a general building plan, it is ordinarily held that in the absence of evidence of a contrary intent it will be assumed that the parties intended to benefit such land. *Maganini v. Hodgson,* 138 Conn 188, 82 A2d 801, 804-

805 (1951); *Armstrong v. Leverone,* 105 Conn 464, 471, 136 A 71 (1927); *McLean v. Thurman,* 273 SW2d 825, 828-829 (Ky 1954); *Snow v. Van Dam,* 291 Mass 477, 197 NE 224, 228-229 (1935); *Hartt v. Rueter,* 223 Mass 207, 111 NE 1045, 1046-1047 (1916); *Sanborn v. McLean,* 233 Mich 227, 206 NW 496, 497 (1925); *DeGray v. Monmouth Beach Club House Co.,* 50 N J Eq 329, 340-342, 24 A 388 (1892); *Tallmadge v. The East River Bank,* 26 NY 105, 109, 112 (1862); *Johnson v. Mt. Baker Church,* 113 Wash 458, 194 P 536, 538 (1920); *Kramer v. Nelson,* 189 Wis 560, 564, 208 NW 252 (1926). See, *Vogeler v. Alwyn Improvement Corporation,* 247 N Y 131, 159 NE 886, 887-888 (1928).

However, where, as here, there is no general building plan, the inference that the covenant is intended to benefit land previously conveyed by the common grantor is ordinarily more difficult to draw. Some courts take the view that in the absence of a general building scheme a covenant cannot inure to the prior grantee even though the covenantor and covenantee intended to benefit the land previously conveyed. *Snow v. Van Dam,* 291 Mass 477, 197 NE 224, 228 (1935); *Hazen v. Mathews,* 184 Mass 388, 68 NE 838, 839 (1903); *Roberts v. Scull,* 58 N J Eq 396, 402, 43 A 583 (1899). But, as pointed out by the Restatement of Property, the prevailing view is to the contrary: "It has, however, come to be the prevailing view that beneficiaries of a promise other than the promisee can enforce the promise (see Restatement of Contracts, Chapter 6) even though the promise is not part of a general plan. To the extent to which this is true, the fact that a promise respecting the use of land is not made pursuant to a general plan of land development is not a barrier to the enforce-

ment of the promise by third parties who are beneficiaries of the promise." 5 Restatement, Property, Servitudes (1944), Intr. Note, Ch 46, p. 3244. We adopt the prevailing view.

We find no difficulty in recognizing the principle that a prior grantee may sue upon a covenant subsequently made by his grantor, if all of the elements essential to the enforcement of the covenant are present. Some courts have regarded the prior grantee as a third party beneficiary of a contract entered into between his grantor and the covenantor. *Hays v. St. Paul M.E. Church,* 196 Ill 633, 63 NE 1040, 1041 (1902); *Lister v. Vogel,* 110 N J Eq 35, 158 A 534, 536 (1932); *Vogeler v. Alwyn Improvement Corporation,* 247 N Y 131, 159 NE 886, 887 (1928); *Mariner v. Rohanna,* 371 Pa 615, 92 A2d 219, 220 (1952). The Restatement adopts this view. 5 Restatement, Property, Servitudes (1944), § 541, Comments c and f. A second theory, recognized by some courts, recognizes the creation of an implied reciprocal servitude. This theory is explained in 2 American Law of Property (1952), § 9.30, p. 426, as follows:

> "* * * when the prior purchaser acquires his land in expectation that he will be entitled to the benefit of subsequently created servitudes, there immediately arises an implied reciprocal servitude against the common grantor's remaining land. If so, then he is enforcing, not the express agreement made by the common grantor when he subsequently sells his remaining land, but this implied reciprocal servitude created by implication at the time of the conveyance to the prior purchaser."

We feel free to employ either of these theories, as the case may demand, in determining whether a prior grantee should be entitled to enforce a covenant in-

serted in a subsequent deed. Cf., *Bristol v. Woodward,* 251 N Y 275, 167 NE 441, 445-446 (1929); 2 American Law of Property (1952), § 9.30, pp. 426-427.

██ To establish a reciprocal servitude it is necessary to find that the prior grantee purchased his land in reliance upon his grantor's promise to impose restrictions upon the retained parcels when conveyed by the common grantor to subsequent purchasers. The evidence in the case at bar is not sufficient to establish such reliance by the plaintiffs. Dr. Lebold testified that he was not certain whether he discussed with plaintiffs the imposition of restrictions on Lot 11 before or after the conveyance to plaintiffs. Mr. Rodgers testified that he believed "quite strongly" that he discussed the matter with Dr. Lebold prior to purchasing his lot, but that he was not certain. This is not sufficient evidence to create a servitude upon Lot 11 in favor of the Lebold lot.

█ We are willing to recognize, as many courts do, that the Statute of Frauds is not an impediment in the creation of such a servitude. *Thornton v. Schobe,* 79 Colo 25, 243 P 617, 618 (1925); *Hall v. Solomon,* 61 Conn 476, 23 A 876, 878 (1892); *Bostwick v. Leach,* 3 Day 476, 484 (Conn 1809); *Reeves v. Morris,* 155 Kan 231, 124 P2d 488, 493 (1942); *Nissen v. McCafferty,* 202 App Div 528, 195 NYS 549, 554 (1922); *Leinau v. Smart,* 30 Tenn 308, 309 (1850); *Johnson v. Mt. Baker Church,* 113 Wash 458, 194 P 536, 538 (1920). For cases contra, see 2 American Law of Property (1952), § 9.25, p. 405, n. 2. But this relaxation of the requirement that the creation of interests in land must be in writing should be attended with the safeguard furnished by satisfactory evidence of a clear and unequivocal agreement between the prior grantee and his grantor, as well as a satisfactory showing that the

subsequent grantee had notice of the agreement. In the present case Lebold and Rodgers did not clearly and unequivocally agree, as a part of their bargain in the sale of the Lebold lot, that Lebold would restrict Lot 11 for the benefit of the Lebold lot.

 Will the evidence sustain the theory that a third party beneficiary contract was created? The scope of a third party beneficiary's rights and remedies in Oregon is not clearly defined. See, Howard, The Restatement of the Law of Contracts with Oregon Notes (Sections 133-147, Chapter 6), 12 Or L Rev 263 (1933); Note, Contracts-Third Party Beneficiaries-Donee's Rights in Oregon, 22 Or L Rev 297 (1943). However, we shall not at this time attempt to reappraise our cases touching upon this part of the law. For purposes of this case it is enough to recognize that under accepted principles relating to the enforcement of restrictive covenants by third persons, plaintiffs do not make out a sufficient case to qualify as either creditor or donee beneficiaries. 5 Restatement, Property, Servitudes (1944), § 541, Comment c, p. 3248, states the following principle:

> "In order to make a third person the beneficiary of a promise it must be shown that the promise was sufficiently comprehensive to include the benefit of the third person within its intended operation. In the case of promises respecting the use of land, it is often true that others besides the promisee would be equally benefited by the performance of the promise. Such others are not entitled to enforce the performance of the promise merely because of that fact (see Illustration 1). It must be shown that benefit to them was one of the things bargained for between the promisee and the promisor."*

* The Restatement of Contracts (1932), § 133 makes the purpose of the promise an operative fact only in the case of a donee beneficiary. See, 2 Williston, Contracts (3rd Ed 1959), § 356A, p. 839, n. 19. Plaintiffs

And see *Hall v. Risley and Heikkila,* 188 Or 69, 213 P2d 818 (1950). In the case at bar it was not shown that the benefit to plaintiffs was one of the things bargained for between the promisee and the promisor. The requirement that benefit to plaintiffs' lot must be shown to be one of the things bargained for between the common grantor and the subsequent grantee may also be regarded as an application of the rule that a purchaser of land will not be bound by a restriction unless he has notice of it. The purchaser must not only have notice that there is a restriction imposed upon the land he is purchasing, but he must have notice of its scope, i.e. the extent to which others may enforce it. We recognize that such proof need not be direct and that it may rest upon "reasonable inferences from the circumstances under which the promise was made." 5 Restatement, Property, Servitudes (1944), § 541, Comment e. But the inferences are not strong enough in the present case. The evidence tending to prove that the bargain between defendants and their grantors had for one of its purposes the benefiting of plaintiffs' land was equivocal.

The evidence may be regarded as establishing that both the Lebolds and the Willetts intended the restriction on Lot 11 to benefit plaintiffs' lot. They purchased Lot 11 to protect their view. Dr. Lebold testified that they even contemplated building a dwelling house, of such size and location so as not to interfere with their view, on Lot 11 to assure themselves

would not qualify as creditor beneficiaries under the Restatement of Contracts definition because the performance of the promise must satisfy "an actual or supposed or asserted duty of the promisee to the beneficiary." As we have shown, there was not sufficient proof of a "duty" on the part of the Lebolds because it was not established that the promise made by the Lebolds to restrict Lot 11 was made prior to the purchase of the Lebold lot by plaintiffs. A promise made prior to the purchase, as a part of the bargained for exchange, would create a contract duty; a subsequent promise, in the absence of new consideration, would be gratuitous and would create no duty. Here, even the existence of a "supposed" duty would necessarily rest on unsubstantial inferences.

of an unobstructed view. Dr. Lebold further testified that the restriction was placed in the contract of sale with the intention of protecting the view from plaintiffs' lot, although he admitted that he did not directly participate in the drafting of the contract. Mr. Willett was in charge of closing the sale of Lot 11, but Dr. Lebold testified that "I felt that he [Willett] had the interest of both pieces of property in mind when we talked about selling that [Lot 11]." But, although the evidence is reasonably clear that at least the Lebolds intended the restrictions to benefit plaintiffs' lot, the evidence that defendants had either actual or constructive notice of this purpose was insufficient to meet plaintiffs' burden of proof.

Defendants could not have learned of the purpose of the restrictions from the Willetts or Lebolds because the sellers' negotiations for the sale of Lot 11 were handled exclusively by Mr. Hutchison, the real estate agent who showed Lot 11 to defendants. At no time prior to the purchase of Lot 11 did defendants discuss with the Lebolds or the Willetts the purpose of the restrictions. Mr. Hutchison testified that he informed the defendants that the Lebolds and Willetts would insist upon building restrictions as a condition to the sale of the lot. He also testified that he informed defendants of the purpose of the restrictions. But there was no evidence to show precisely what Mr. Hutchison understood this purpose to be, nor was it shown what he communicated to defendants. He simply testified that the sellers, i.e. the Lebolds and the Willetts, told him why the restriction would be imposed upon Lot 11 and that he communicated this purpose to Mr. Reimann. In order to conclude that Hutchison informed Reimann that the restrictions were to benefit plaintiffs' lot, we would

have to infer that Hutchison was informed by the Lebolds (or by their representatives, the Willetts) that they wanted to benefit the lot they had previously conveyed to plaintiffs. We do not feel that we can supply this inference.

To be weighed against any inference which might be drawn that the parties intended the restriction to benefit the Lebold lot is the testimony of Mr. Reimann. He testified as follows:

"A He told me that there will be restrictions. He told me about the Willett property. He never mentioned Mr. Rodgers and I never knew the man until this suit came up but only that—but the real estate man told me that Mr. Lebold has sold the house and he didn't have anything to do with it any more.

"* * * * *

"Q Now, did Mr. Hutchison ever tell you about any restrictions that would be on the property?

"A He said there would be restrictions on the property of one foot above the curb line.

"Q And did he tell you who that was to benefit?

"A Yes, he told me it was to benefit Mr. Willett. He hadn't sold it yet.

"Q Did he tell you what the purpose of the restriction was?

"* * * * *

"A Yes.

"Q He did. What did he tell you the restrictions were for?

"A It was to help Mr. Willett sell his property.

"Q Did he ever tell you the purpose of those restrictions was to protect the view from either the Willett or the Lebold lot?

"A The Lebold property was never mentioned nor were the Rodgers either.

"Q What about the Willett property?

"A That was mentioned.

"Q What about the view?

"A That was, I think, mentioned, too, but the way I understand Willett it was absolutely all right with his view property.

"Q Didn't he tell you that the restrictions would be on there to protect the view?

"A Well, I don't know exactly what he said at that minute, I don't know.

"Q But you think something was mentioned about the view?

"A Well, I bought the property just for the view of it. Now, there is also a time that view was mentioned—what he exactly said I don't know, I couldn't remember if I wanted to.

"* * * * *

"Q Now, you heard Mr. Hutchison testify here this morning, did you not, Mr. Reimann?

"A Yes.

"Q Can you remember what he did testify— I'm not going to ask you to repeat it—but do you remember what he did testify to substantially?

"A Well, I don't know what you mean by that. You better give me a certain point and I can say yes or no.

"Q As I recall it, Mr. Hutchison testified that he told you what the reason for the restrictions were; he didn't testify what that reason was, but he testified that he did tell you what the reason for the restrictions were, do you remember that?

"A If the stenographer knows, I don't know. I don't remember those things.

"Q Well, are you denying that he did tell what the reason for the restrictions were?

"A I don't deny anything.

"Mr. BANKS: No further questions."

Plaintiffs argue that the intention to benefit plaintiffs' lot can be inferred from the juxtaposition of plaintiffs' and defendants' lots. As we have already stated, the purpose of a restriction may be arrived at by drawing reasonable inferences from the circumstances under which the restriction was created. One of these circumstances is the location of the burdened property in relation to the land of the person claiming the benefit of the restriction. In the usual case the inference is drawn from the fact that the claimants' and defendants' land are a part of a general plan of development. *McRae v. Lois Grunow Memorial Clinic,* 40 Ariz 496, 14 P2d 478, 480-481 (1932); *Hegna v. Peters,* 199 Iowa 259, 261-263, 201 NW 803 (1925); *Turner v. Brocato,* 206 Md 336, 111 A2d 855, 862 (1955); *DeGray v. Monmouth Beach Club House Co.,* 50 N J Eq 329, 24 A 388 (1892); *Ridley v. Haiman,* 164 Tenn 239, 47 SW2d 750, 753 (1932). And in some cases notice of restrictions has been imputed to the purchaser from the physical appearance of the neighboring land in the subdivision. *Hegna v. Peters,* supra; *Sanborn v. McLean,* 233 Mich 227, 206 NW 496, 498 (1925); *Shoyer v. Mermelstein,* 93 N J Eq 57, 114 A 788, 789 (1921); *Rowe v. May,* 44 N M 264, 101 P2d 391, 398 (1940); *Neidlinger v. New York Ass'n. Etc.,* 121 Misc 276, 200 NYS 852, 855 (1923). Contra: *Werner v. Graham,* 181 Cal 174, 183 P 945, 949 (1919) (restriction required to be expressed in deed); *Casterton v. Plotkin,* 188 Mich 333, 154 NW 151 (1915) (insufficient evidence of uniformity); *Bradley v. Walker,* 138 N Y 291, 33 NE 1079, 1081

(1893) (same). However, the inference that the restriction was intended to benefit the complainants' property may also be drawn where a general plan of development does not exist. *Clem v. Valentine,* 155 Md 19, 141 A 710, 712-713 (1928); *Vogeler v. Alwyn Improvement Corporation,* 247 N Y 131, 159 NE 886, 888 (1928); *Ball v. Milliken,* 31 R I 36, 76 A 789, 794-795 (1910). See, *Hays v. St. Paul M. E. Church,* 196 Ill 633, 63 NE 1040, 1041-1043 (1902); *Reed v. Elmore,* 246 N C 221, 98 SE2d 360, 364 (1957). Cf., *Sailer v. Podolski,* 82 N J Eq 459, 88 A 967, 969-970 (1913).

In the present case we would be willing to find that defendants had notice that the restrictions on Lot 11 were intended to benefit plaintiffs' lot if the circumstances strongly supported that inference. But as we read the record the inference is not strong. A dwelling house could be constructed on Lot 11 in such a way as to interfere with the view from the Willetts' lot. It is, therefore, possible and not unreasonable to construe the restriction to have been inserted in the contract of sale for the purpose of benefiting Willetts' lot only. And that, according to Mr. Reimann's testimony, was precisely his understanding of the purpose of the restriction. To accept plaintiffs' position we would have to disbelieve Reimann and, in addition, draw an inference from a highly equivocal circumstance. A burden on land, created by covenant, should rest upon a more substantial foundation of proof.

The decree of the trial court is affirmed. Neither party to recover costs.

SLOAN, J., dissents.