Argued June 3, reversed and remanded July 23, 1971

# JOHNSON et al, *Appellants, v.*
# CAMPBELL et al, *Respondents.*

487 P2d 69

In Banc

*Robert W. Hill,* Eugene, argued the cause for appellants. On the briefs were Hill & Schultz, Eugene.

*James H. Anderson,* Eugene, argued the cause for respondents. With him on the brief were Thompson, Mumford & Woodrich, Eugene.

O'CONNELL, C. J.

This is a suit for a declaratory decree interpreting a land sale contract entered into between plaintiffs as vendees and defendants as vendors. Plaintiffs contend that under the contract they are free to construct multi-family residential units on the land being purchased. The trial court held otherwise and plaintiffs appeal.

In 1964 plaintiffs, James T. Johnson and his wife Elizabeth, entered into a land sale contract to purchase from defendants Mr. and Mrs. Campbell the land involved in this suit. The contract contained the following terms:

"6. Purchasers shall have the right and agree they will subdivide the above described real property at their sole cost and expense subject to the following limitations:

"(a) Said property shall be subdivided in accordance with the preliminary plot plan heretofore prepared by Purchasers and shall contain 7 lots.

"* * * * *

"20. It is further agreed as follows:

"(1) For purpose of lot release on One Thousand Seven Hundred Fifty ($1,750.00) Dollars payment, no lot shall be in excess

of 1/7 of the real property, exclusive of streets, described herein.[①]

"(2) All deeds shall contain a clause providing that all property shall be for residential use only and no residence constructed thereon shall contain less than 1,100 square feet of living area with a building of Ten Thousand ($10,000.00) Dollars or more."

The Johnsons wished to construct residential units on the property but had difficulty financing the plan. To obtain financing they brought the plaintiffs James and LaVerne McDonald into the arrangement, the Johnson's assigning one half of their interest to the McDonalds. Their ultimate plan was to form a corporation which was to become the owner of the property.

Since the contract precluded assignment of the vendee's rights without consent of the vendors, the Johnsons sent a letter to defendants seeking consent to the assignment. The letter explained the proposal for developing the property including the contemplated transfer of title to a corporation. The letter then went on as follows:

"* * * The assignment of our interest in said contract and property to Emerald Properties, Inc., will, of course, be subject to all the terms and conditions of the contract, excepting that as you know, we have pending an application with the Board of County Commissioners and County Planning Commission for permission to construct multiple family units upon the property, which you have indicated will be acceptable to you."

---

[①] This is in conjunction with paragraph 21 of the contract wherein sellers agree to convey one lot for each payment of $1,750.

The Campbells indicated their approval of the proposal in the letter by signing their names at the foot of the letter under the legend "ACCEPTED AND APPROVED," but only after they had added the following statement which was, in turn, signed by the Johnsons:

"Our consent to this assignment shall not relieve or diminish the personal liability of James T. Johnson and Elizabeth Johnson to any and all provisions of the September 29, 1964 contract."

In 1968 plaintiffs paid to the Cascade Title Company, the escrowee, the balance due on the contract and demanded a deed. The Campbells directed the escrowee to prepare deeds restricting construction to single family dwellings. Plaintiffs thereupon instituted this suit.

1. It has frequently been said that a restriction in a deed will not be enlarged or extended by construction or implication beyond the clear meaning of its terms.[2]

2. The restriction upon which defendants put their principal emphasis provides that the property "shall be for residential use only," contending that this is to be construed to mean that the property is to be used exclusively for single family residence purposes. This interpretation would obviously enlarge the express terms of the restriction and would, therefore, be inconsistent with the constructional preference generally adopted. It is generally held that a restriction for residential purposes without more does not limit the use of the property to single family residential pur-

[2] Aldridge v. Saxey, 242 Or 238, 242-43, 409 P2d 184 (1965); Rodgers et ux v. Reimann et ux, 227 Or 62, 66, 361 P2d 101 (1961); 5 Powell on Real Property § 673, p. 156 (1968).

poses and consequently does not prohibit the use of the property for apartment purposes.

We favor the rule of construction adopted by most of the courts and therefore cannot accept defendants' interpretation of the restriction limiting the use to single family residential purposes.[8]

3. Paragraph 6 of the contract set out above providing that the property shall be subdivided "in accordance with the preliminary plot plan heretofore prepared by Purchasers and shall contain 7 lots," does not necessarily exclude the use of the property for multi-family dwelling purposes and therefore will receive the same liberal interpretation in favor of the more extended use.

4. Even if a narrower general rule of construction were adopted we would hold that the contract must be interpreted to permit the construction of apartment buildings on the property because the parties have, by their conduct, given the contract this practical construction. The approval by the Campbells of the proposal to construct multiple family units contained in Johnsons' letter indicates clearly that the parties regarded the restriction as a limitation on the property only as to residential use and not as a limitation on the character of such residential use.

The decree of the trial court is reversed and the cause is remanded with directions to enter a decree consistent with this opinion.

---

[8] Annot., 14 ALR2d 1376, 1403-04 (1950).