Argued November 7, affirmed December 28, 1977, petition for rehearing
denied January 24, 1978

SWAGGERTY et al, *Respondents,*

*v.*

PETERSEN, *Appellant.*

(No. 75-5432, SC 25007)

572 P2d 1309

H. Thomas Evans, Eugene, argued the cause for appellant. With him on the briefs were Dave Phillips, and Evans & Armstrong, Eugene.

Joe B. Richards, of Luvaas, Cobb, Richards & Fraser, Eugene, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, Howell and Bryson, Justices, and Gillette, Justice pro tempore.

HOWELL, J.

**HOWELL, J.**

This suit arises out of a dispute over the meaning of the density provisions of certain subdivision building restrictions. All of the parties own property within the subdivision. The plaintiffs contend that two houses built by defendant are in violation of the applicable building restrictions. The trial court agreed and ordered the houses removed. Defendant appeals, contending that the restrictions have not been violated; that if they have been violated, the plaintiffs have waived their right to complain or are estopped to do so; and that, in any event, plaintiffs' remedy should have been limited to money damages.

■ The property in question is part of the Amended Plat of Hawkins Heights in Eugene, and is subject to the following restrictions:

> "1. Said lots [the lots in the Amended Plat of Hawkins Heights] shall be used exclusively for residential purposes and not more than one single-family residential structure shall be erected or maintained on any lot * * *.

> "* * * * *.

> "11. For the purposes of these restrictions, the word 'lot' or 'lots' as used herein, shall consist of any platted lot or two adjacent lots or portion of two adjacent lots held under one ownership as a location for one residential structure."

Defendant, who owned six lots, obtained the approval of the city authorities to resubdivide those six lots into an eight-lot subdivision. He has constructed single-family residences on some of the eight lots. Plaintiffs objected when construction began on the two houses at issue here and filed this suit shortly thereafter.

Whether defendant has violated the restrictions depends upon their proper construction. An illustrative sketch will help to explain the dispute.

[ 741 ]

In this sketch, which illustrates the general nature of the dispute without reproducing the contours of the affected lots in detail, the boundaries between three original lots (A, B, and C) are indicated by dotted lines. Solid lines designate the boundaries between lots 1, 2, 3, 4, and 5 of the new subdivision.

Plaintiffs did not object when defendant built houses on lots 1, 3, and 5. They had no grounds to do so, they say, because the restrictions were not violated at that time; there was only one house on each of the original lots. However, when defendant began construction on lots 2 and 4, plaintiffs objected that the two additional houses would violate Paragraph 1 of the restrictions, which provides that "not more than one single-family residential structure shall be erected * * * on any lot * * *." Defendant contends that there is no violation because lots 2 and 4 each consist of a "portion of two adjacent lots held under one ownership," and each is thus a "lot" as defined in Paragraph 11.

We cannot adopt defendant's position. It focuses on lots 2 and 4 of the new subdivision as permissible building sites under the language of Paragraph 11, and ignores the status of lots 1, 3, and 5. Each of those lots is but a portion of one of the original lots. Paragraph 11 does not define "lot" to permit the construction of a residence on a portion of a single lot. Every "lot" as there defined must either consist of an original platted lot or must contain portions (or the whole) of two original adjacent platted lots.

By limiting permissible construction to one residence on any one lot, the drafters of these restrictions

[ 742 ]

apparently intended to limit the overall density within the subdivision. However, by defining "lot" to include "any * * * portion of two adjacent lots held under one ownership," they apparently also intended to permit the original lots to be redivided, but only if each new lot contains parts of two adjacent original lots.

This is, to be sure, a somewhat indirect way of expressing a density limitation. Our interpretation of the restrictions does, however, give direct effect to the language of both of the relevant paragraphs of the restrictions. Construed in this way, those two paragraphs, together with the provisions for minimum house size and minimum setbacks,[1] effectively limit the overall density of the subdivision.

When defendant constructed residences on lots 1, 3 and 5 of the new subdivision, he had built a residence on each of the three original lots. He was not entitled, under the restrictions, to treat a fraction of each of those lots as a permissible building site and thus create two additional lots which, considered in isolation, are in literal compliance with Paragraph 11.

In support of his position, defendant relies on the rule that:

"* * * because of the public policy favoring untrammeled land use, such restrictions are construed most strongly against the covenant and will not be enlarged by construction." *Aldridge v. Saxey,* 242 Or 238, 242, 409 P2d 184 (1965).

We have recognized and applied that rule many times. *See, e.g., Johnson v. Campbell,* 259 Or 444, 447, 487 P2d 69 (1971); *Smoke v. Palumbo,* 234 Or 50, 52,

---

[1]Paragraph 2 provides:

"No residential structure shall be erected or maintained on any lot which has a ground floor area of less than twelve hundred square feet on the main floor, exclusive of open porches and garages."

Paragraph 4 provides:

"No building erected on any lot shall be less than twenty five feet from the front street line or fifteen feet from the side street line, or less than ten feet from the side lot line except on the rear quarter of the lot."

379 P2d 1007 (1963); *Rodgers et ux v. Reimann et ux,* 227 Or 62, 65, 361 P2d 101 (1961); *Schmitt et ux v. Culhane et al,* 223 Or 130, 354 P2d 75 (1960); *Hall v. Risley and Heikkila,* 188 Or 69, 87-88, 213 P2d 818 (1950); *Crawford et al v. Senosky et al,* 128 Or 229, 232, 274 P 306 (1929); *Grussi v. Eighth Ch. of Christ, Scientist,* 116 Or 336, 342, 241 P 66 (1925).

■ We are doubtful, however, whether we should continue to do so. Public policy, as expressed in recent legislation, no longer favors "untrammeled land use," but requires the careful public regulation of the use of all of the land within the state. *See especially,* ORS chapter 197.

■ In this case we need not inquire whether this legislative expression of public land use policy requires a new approach to the construction of private restrictions on the use of land. Even under the traditional rule, upon which defendant relies, a "construction in favor of the unrestricted use of property must be reasonable." *Hall v. Risley and Heikkila, supra* at 87. As we have pointed out, defendant's proposed construction of Paragraph 11 is not reasonable because it would result in building sites composed of a fraction of a single lot, contrary to the express provisions of Paragraph 11.

We hold, then, that the trial court was correct in its conclusion that defendant violated the restrictions applicable to the Amended Plat of Hawkins Heights.

■ We further hold that the trial court correctly concluded that defendant had not established his affirmative defenses of waiver and estoppel.

Defendant contends that plaintiffs waived any right to complain by failing to act promptly to enforce their rights, and by failing to bring suit before he had made substantial expenditures. He points out that the suit was not filed until approximately a year and a half after he first applied for approval of his eight-lot

subdivision, and slightly more than a year after final approval was received.

There was no evidence that any of the plaintiffs had notice of the application for or approval of the new subdivision. Although they were aware that the defendant had built three houses (on lots 1, 3, and 5 of the new subdivision), that construction was not, as pointed out above, in violation of the restrictions. So far as the record shows, the first notice that any of the plaintiffs had that defendant intended to construct more houses than the restrictions permit was some time in October, 1975. Plaintiff Swaggerty testified that he first learned of the prospective violations when he noticed preliminary excavation for foundations at the sites of the houses in question. He did not testify to the exact dates of his observations, but they must have been made some time shortly before October 15 when defendant testified that the first concrete was poured for the foundations.

On October 17, plaintiff Swaggerty's attorney wrote to defendant, warning him that Swaggerty contended the restrictions were being violated, and that a suit for injunction would be brought if construction did not cease immediately. Defendant did not reply to this letter until October 27, when his attorney wrote to Swaggerty's attorney. This letter took the position that defendant, for various reasons, had a right to proceed with the construction. Defendant did so, but during the latter part of October he held a meeting in his home to which property owners in the subdivision were invited to discuss their objections to defendant's development. Among other objections, complaints about violations of the density restrictions were made at that meeting. Defendant's attorney, who attended the meeting, contended that the two additional houses would not violate the restrictions.

This suit was filed on November 4, 1975. There was no undue delay by the plaintiffs. The beginning of the construction was the first notice to these plaintiffs

that a violation of the restrictions was threatened. Suit was filed approximately three weeks later. Nothing occurred during that period to lead defendant to believe that Swaggerty did not intend to follow through on his original complaint, and other property owners also complained during this time. We do not believe that three weeks is an unreasonable lapse of time, considering the fact that the plaintiffs were, during that period, making their objections known to defendant and determining whether he would stop construction without the necessity of legal action.

None of the cases cited by defendant indicate that a delay comparable to that involved here would constitute acquiescence in the violation or a waiver of the right to enforce a restrictive covenant.[2]

■■ Defendant also contended that plaintiffs, by acquiescing in numerous violations of the restrictions elsewhere in the subdivision, must be held to have waived or abandoned the restrictions or to be estopped from enforcing them. He relies first on evidence that there are numerous violations of the restrictions governing minimum house size, easements, setbacks, and landscaping. Assuming that plaintiffs were, or should have been, aware of these violations and failed to object to them does not preclude them from suing to enforce the density restrictions. The right to enforce one restrictive covenant is not lost by acquiescence in the violation of another restriction. 5 Powell, Real Property 227, § 683, and cases cited in n. 13; *Riley v. Stoves,* 22 Ariz App 223, 526 P2d 747, 753 (1974). The alleged violations were not so general and pervasive as to result in a change in the nature of the subdivision justifying a finding that the general plan embodied in the restrictions had been abandoned. *See Guyton v. Yancey,* 240 La 794, 125 So2d 365 (1961).

---

[2] *George v. Smith,* 250 Or 386, 443 P2d 229 (1968); *Menstell et al v. Johnson et al,* 125 Or 150, 262 P 853, 266 P 891, 57 ALR 311 (1928); *Stewart v. Finkelstone,* 206 Mass 28, 92 NE 37 (1925); *Whiteney v. Union R. Co.,* 77 Mass (11 Gray) 359 (1858); *Bigham v. Winnick,* 288 Mich 620, 286 NW 102 (1939); *Cantieny v. Boze,* 209 Minn 407, 296 NW 491 (1941); *Smith v. Spencer,* 81 NJ Eq 389, 87 A 158 (1913).

■ There is also evidence that the relevant provisions of Paragraphs 1 and 11 have been violated in other instances without objection by these plaintiffs. The evidence convinces us that these violations are relatively few, that plaintiffs were unaware of them until shortly before this suit was filed, and that they were not so obvious that plaintiffs must be held to have acquiesced in a relaxation of the density restrictions. We agree with the trial court that these violations do not establish a defense to the present suit.

■■ Finally, defendant urges that if plaintiffs are entitled to any relief, that relief should be limited to money damages. He contends that if the houses must be removed, the harm he would suffer would be greatly disproportionate to the benefit the plaintiffs would enjoy. He asks that we apply the so-called "balance of hardship" doctrine, to which we referred in *Tauscher v. Andruss,* 240 Or 304, 308-09, 401 P2d 40 (1965):

> "There being an encroachment, plaintiffs are entitled to a mandatory injunction ordering the removal unless it would be inequitable to require such removal. *Under the proper circumstances* the court will consider the relative hardship of the parties and if the removal of the encroaching structure would cause damage to the defendant disproportionate to the injury which the encroachment causes plaintiff, an injunction will not issue." (Emphasis added.)

We have recognized, and sometimes applied, that doctrine in other cases as well. We have treated the defendant's hardship as relevant to the allowance of a mandatory injunction of this kind in suits based on a violation of a zoning ordinance,[3] encroachments,[4] obstruction of easements,[5] breach of trust agreement,[6] and improvement of another's land under mistaken

---

[3] *Frankland v. City of Oswego,* 267 Or 452, 478-79, 517 P2d 1042 (1974).

[4] *Tauscher v. Andruss,* 240 Or 304, 308-09, 401 P2d 40 (1965).

[5] *Andrews v. North Coast Development,* 270 Or 24, 526 P2d 1009 (1974).

[6] *Heitkemper v. Schmeer et al,* 130 Or 644, 668, 275 P 55, 281 P 169 (1929).

claim of ownership.[7] Because policy and practical considerations may differ depending upon the source of the right which the suit is brought to vindicate, the "proper circumstances" for application of the doctrine of relative hardship may also differ.

However, we need not employ such distinctions in the present case. We hold, for two reasons which are applicable regardless of the source of plaintiffs' right, that this is not a proper case in which to weigh the parties' relative hardships.

In the first place, defendant has not shown what harm the injunction would cause him. He testified that he would lose $60,000 or more if the houses had to be destroyed. He further testified that because these houses had concrete slab floors and were built on a hill, it would be very difficult to move them. He admitted, however, that he knew nothing about moving houses and that he had not attempted to find out whether these houses could be moved and, if they could, what the cost would be. On this evidence we cannot hold that defendant has shown that it would be inequitable to grant the injunction.

In the second place, we find that defendant himself is responsible for most, if not all, of the hardship which moving or dismantling the houses would entail. There was only cement work in place when plaintiff Swaggerty's attorney wrote to defendant, notifying him of a claim that the construction would violate the restrictions. At the time suit was filed, a short time later, the foundation work had been completed on both houses and, according to the defendant, one of them had been framed and roofed. All the rest of the construction took place while this suit was pending.

As we pointed out above, plaintiffs complained promptly when they became aware that defendant was threatening to violate the restrictions. They did not delay unreasonably in filing suit. Defendant cannot,

---

[7] *Jensen v. Probert,* 174 Or 143, 160, 148 P2d 248 (1944).

after suit has been filed and he is thus clearly informed of both the nature of plaintiffs' claim and their intention to insist upon it, deprive them of their right to complete relief by increasing his investment, and thus his potential hardship, before the final decision.

> "* * * The defendant who pending the suit changes the existing condition, as by the erection of a building, does so at his own risk that the right may ultimately prove to be in the plaintiff. He cannot in such cases claim the advantage that the balance of injury might otherwise allow him, because he has acted with full notice of the other party's claim." 5 Pomeroy's Equity Jurisprudence 4477 (2d ed 1919).

*Compare Andrews v. North Coast Development,* 270 Or 24, 526 P2d 1009 (1974), in which plaintiff was limited to her damage remedy because she encouraged defendant to proceed with construction while suit was pending.

Defendant argues that it was really the plaintiffs who were responsible for the continuation of construction during the suit, because they decided not to post the bond provided for in ORS 32.020 and thus abandoned their initial request for a preliminary injunction. Defendant had informed the court that he would not contest the preliminary injunction if it were conditioned upon a bond which he considered adequate.

A preliminary injunction is not a prerequisite to a final decree enjoining a defendant. ORS 32.010.[8] Neither our statutes nor traditional equity practice place on plaintiffs the burden of deciding whether the defendant shall carry on the disputed activities pending final decision of the case. Plaintiffs may, if they wish, apply for a temporary injunction. However, there is no penalty attached to their failure to do so.

---

[8] This is the general rule. *See, e.g., Parker v. West View Cemetery Ass'n.,* 195 Ga 237, 24 SE2d 29 (1943); *Louisiana State Board of Medical Exam. v. Banker,* 100 So2d 920 (La App 1958); *Bayer v. Associated Underwriters, Inc.,* 402 SW2d 11 (Mo App 1966).

In summary, we agree with the trial court's conclusion that the construction of the two houses in question constituted a violation of the applicable density restrictions. We also hold, as did the trial court, that plaintiffs are not precluded from enforcing those restrictions. Finally, we agree with the trial court that, under the circumstances of this case, the plaintiffs were entitled to have the offending houses removed.

Affirmed.