Argued and submitted October 7, 1991, reversed January 8, reconsideration denied March 4, petition for review denied March 24, 1992 (313 Or 74)

Mahlon and Jolene PALMER;
Don and Joyce Boyd; Allan and Nancy Connell;
Richard and Roberta Checkwith;
Darold and Marilee Dilley; Kanoelani Durdan;
Bill and Cynthia Good; Lester and Patricia Haglund;
Bob and Barbor Loud; Joe and Connie Madar;
Donald and Ursala Mayne; Albert and Elaine McKenzie;
Dale and Joy McLouth; Tom Molly;
John and Madeline Pagano; Richard and Cheryl Reinertson;
Sharon Sharpnack; Joe and Sandra Sharshell;
Jim and Carol Stuckey; Carlos and Sylvia Valdez;
Wayne and Barbara Warren; Jeff Wester;
and Henry and Virginia Wydra,
*Respondents,*

*v.*

Jeffrey JOHNSTON
and Carrie J. Buchanan,
*Appellants.*

(90-CV-0038-MS; CA A66875)

823 P2d 1024

Brian J. MacRitchie, Bend, argued the cause for appellants. With him on the briefs was Merrill, O'Sullivan, MacRitchie & Petersen, Bend.

William M. Holmes, Bend, argued the cause for respondents. With him on the brief was Gray, Fancher, Holmes, Hurley, Bryant & Lovlien, Bend.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendants appeal from a judgment[1] ordering them to remove their "mobile home" from their property because it violates a restrictive covenant. On *de novo* review, we reverse.

Plaintiffs and defendants are present owners of real property in the Indian Ford Meadows subdivision in Sisters. Defendant Johnston purchased property in the subdivision in early 1976. Restrictive covenants for the subdivision were executed in August, 1976.[2] After defendants' marriage, they purchased a "manufactured home"[3] and moved it to their property in spring, 1987. Plaintiffs filed a complaint in January, 1990, seeking removal of defendants' house, because it allegedly violates Article I, section 3, of the covenants.[4] The trial court granted a mandatory injunction. It explained:

> "In April of 1987, Jeff Johnston and Carrie Buchanan bought a home manufactured by Golden West, known as the Bradberry Model, for $32,000. The home was built in two sections. Each section had attached axles, wheels and tongue, which was pulled by a semi-truck to arrive at Sisters, Oregon. Each section was 56 feet by 13 1/2 feet. The home contains approximately 1512 square feet and has three bedrooms, a living room, a kitchen, and incidental rooms. The home has a low-pitched roof, natural wood siding. It is drywalled inside. A crane placed the two sections on concrete footings, which were then joined. The tongue, axle and wheels were removed from the individual sections. Stemwalls made of cinder blocks were then installed around the

---

[1] Defendants filed a counterclaim, alleging that some of the plaintiffs were in violation of the restrictive covenants. Although the court held in defendants' favor on some of those claims, plaintiffs have not appealed that decision.

[2] Because the parties do not question whether the covenants apply to property purchased before their execution, we do not address that question.

[3] Defendants offered the testimony of an inspector from the Oregon Building Codes Agency, who said that defendants' home is a "manufactured home," because it was built to comply with federal standards. He testified that there are differences between "manufactured homes" and "mobile homes" and that the term "manufactured home" was used by his agency in 1976.

[4] Article I, section 3, provides:

> "No mobile homes, campers, travel trailers, or similar units may be permanently installed on any lot; however, a mobile home, camper or other such unit may be used on a temporary basis during the period of construction of a permanent residence on a lot. Any mobile homes, campers, travel trailers or other such units, kept on any lot, shall be stored in such a manner as to be completely screened from the view of all other lots in Indian Ford Meadows."

outer wall, giving an appearance of a foundation. The home was landscaped and an attached deck was built.

"* * * * *

"Clearly, this home was built to be drawn by another vehicle while transported on a highway. I conclude this is a mobile home within the meeting [*sic*] of Exhibit No. 1. And it was contemplated in the covenants that a home of this nature would not be permanently installed on any lot within the subdivision. I refered [*sic*] to ORS 801.340 and 801.560."

Defendants presented expert testimony that their house has the same structural integrity as a house constructed on-site and is not designed to be moved, once it is in place. The moving process would require removal of two decks, utilities, landscaping, sub-framing and the footings, exterior trim, siding and ridge caps, as well as some excavation. After interior preparation, the sections would have to be separated and loaded by a crane onto axles.

Plaintiffs have the burden of proving that defendants have violated the covenant. To decide whether defendants' house is a "mobile home" or "similar unit," we attempt to determine the intent of the drafters from the language of the covenants, read in the light of the circumstances of their formulation. *Alloway v. Moyer*, 275 Or 397, 401, 550 P2d 1379 (1976) (quoting *Powell on Real Property* 155, ¶ 673 (Rohan rev 1975)).

The covenant is ambiguous, because it does not provide a definition of a "mobile home." No evidence was presented as to what the drafters intended to be encompassed by the covenant's language. To determine the intent of the drafters, the trial court relied on ORS 801.340 and ORS 801.560, as well as the fact that sections of the house were transported to the property on their own axles. ORS 801.340 and ORS 801.560 were enacted after the adoption of the covenants.[5] Moreover, there is no evidence suggesting that the drafters intended to adopt the definitions in the Motor

---

[5] When the covenants were executed, the predecessor to ORS 801.340, *former* ORS 481.021(3) (*repealed by* Or Laws 1983, ch 338, § 978) provided:

" 'Mobile home' (*excluding a modular home, prefabricated home* and tent trailer) means a trailer or structure that:

"(a) Is designed to be transported or used upon the highways;

Vehicle Code. The fact that sections of the house were constructed off-site and then towed on their own axles to the building site to be assembled may satisfy a generic definition of "mobile home." However, it is arguable that the phrase connotes only an intact "mobile home" that is readily movable. Additionally, the covenants provide that not more than one "single family dwelling * * * shall be constructed or *placed* on any lot in Indian Ford Meadows." (Emphasis supplied.) Without a definition or other evidence of what "mobile home" means as used in the covenant, we are left to speculate as to the scope of the restriction.

Historically, the courts have applied a rule of strictly construing restrictive covenants against the claimed restriction and, unless the use complained of is plainly within the provisions of the covenant, it will not be restrained. Restrictions will not be extended by implication or enlarged by construction, and all doubt will be resolved in favor of unrestricted use. *Schmitt et ux v. Culhane et al*, 223 Or 130, 132, 354 P2d 75 (1960).

In *Swaggerty v. Petersen*, 280 Or 739, 572 P2d 1309 (1977), the court, in *dictum*, expressed doubt that it should continue to apply the rule of strict construction:

"We have recognized and applied that rule many times.

"We are doubtful, however, whether we should continue to do so. Public policy, as expressed in recent legislation, no longer favors 'untrammeled land use,' but requires the careful public regulation of the use of all of the land within the state. *See especially*, ORS chapter 197." 280 Or at 744. (Citations omitted.)

This case does not involve land use laws or public regulation. Rather, it is a matter of interpreting the intent of the drafters of the covenants, because they are contractual in nature. *See Guild v. Wallis et al*, 130 Or 148, 279 P 546 (1929). At the heart of the issue is whether they were intended to limit the free use of the land in the subdivision in the manner in which plaintiffs claim. In the absence of persuasive evidence that the covenant was intended to

"(b)  Is capable of being used for human habitation or for business, commercial or office purposes; and

"(c)  Is not a travel trailer." (Emphasis supplied.)

exclude houses such as defendants', we conclude that plaintiffs have not carried their burden.

Reversed.