Argued and submitted March 3, decision of the Court of Appeals affirmed; judgment of the circuit court reversed, and case remanded to the circuit court with instructions May 30, 1997

Peter H. YOGMAN
and Diane E. Walker,
husband and wife,
Raymond C. Miller and Myrtle L. Miller,
husband and wife,
and Robert W. Knapp and Ruth E. Knapp,
husband and wife,
*Petitioners on Review,*

*v.*

Gregory A. PARROTT
and Myra L. Parrott,
husband and wife,
*Respondents on Review.*

(CC 94-4377; CA A89262; SC S43641)

937 P2d 1019

Judith N. Selich, Newport, argued the cause and filed the petition for petitioners on review.

Stephen F. Crew, of O'Connell Ramis Crew Corrigan & Bachrach, Portland, argued the cause for respondents on review. With him on the briefs was Gary Firestone.

GRABER, J.

## GRABER, J.

Plaintiffs and defendants own houses in a beach-front subdivision in Lincoln County. Plaintiffs' and defendants' lots are subject to a set of restrictive covenants, among them the following:

> "All lots within said tract shall be used exclusively for residential purposes and no commercial enterprise shall be constructed or permitted on any of said property."

Defendants use their beach house as a vacation home and, when they are not using it themselves, they rent it for short periods of time to others, who likewise use it as a vacation home.

Plaintiffs filed a complaint seeking (a) a declaration that defendants' rental activity violates the quoted restrictive covenant and (b) an injunction enjoining such activity. After defendants answered, the parties filed cross-motions for summary judgment. The trial court granted plaintiffs' motion and denied defendants' motion, reasoning that defendants were "engaging in the commercial activity of a rental business." Accordingly, the trial court entered a judgment for plaintiffs.

Defendants appealed. The Court of Appeals reversed and remanded for entry of judgment for defendants, concluding as a matter of law that defendants' activity does not violate the terms of the restrictive covenant. *Yogman v. Parrott*, 142 Or App 544, 921 P2d 1352 (1996). We now affirm the decision of the Court of Appeals.

For present purposes, the facts are not in controversy. Defendants live in Portland. They rent their beach house to others of their choosing, on a short-term basis, when they are not using it. Defendants and their renters use the property for vacations. Defendants charge a daily or weekly fee to renters and allow as many as ten people and five vehicles at a time. Defendants provide their renters with a list of rules for using the house, including arrival and departure times.

The transactions concerning the rental of defendants' beach house do not occur on the premises. Negotiations occur elsewhere, and payment is made elsewhere. Defendants provide no goods, staff, or services at the house. For example, renters use their own linens, do their own cleaning, buy and prepare their own food, and take out their own garbage.

Defendants are not required to have, and do not have, a business license.

At least one other house in the same subdivision has been used as a short-term vacation rental.

 To interpret a contractual provision, including a restrictive covenant, the court follows three steps. First, the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends.

> "When considering a written contractual provision, the court's first inquiry is what the words of the contract say * * *. To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question. The meaning of disputed text in that context is then determined. In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. In the absence of an ambiguity, the court construes the words of a contract as a matter of law." *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995) (citations omitted).

*See also* ORS 42.230 (in construing a document, the court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted"); *Johnson v. Campbell*, 259 Or 444, 447, 487 P2d 69 (1971) (restriction of property "for residential use only" did not mean that the property was to be used only for *single-family* residences; that interpretation would add to and thus be inconsistent with the express terms of the covenant).

■ We proceed to consider the text and context of the restrictive covenant at hand. We first address whether defendants' rental activity violates the requirement that the property "be used exclusively for residential purposes." "Residential" means, as relevant, "used, serving, or designed as a residence or for occupation by residents * * *[;] of, relating to, or connected with residence or residences." *Webster's Third New Int'l Dictionary* 1931 (unabridged ed 1993). In turn, "resident" refers to "one who resides in a place: one who dwells in a place for a period of some duration." *Ibid.* "Residence" is defined as "the act or fact of abiding or dwelling in a place for some time: an act of making one's home in a place * * *[;] the place where one actually lives or has his home as distinguished from his technical domicile * * *[;] a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit * * *[;] a building used as a home: DWELLING." *Ibid.*

The ordinary meaning of "residential" does not resolve the issue between the parties. That is so because a "residence" can refer simply to a building used as a dwelling place, or it can refer to a place where one intends to live for a long time. In the former sense, defendants' use is "residential." The people who rent defendants' beach house use it as a temporary home, and their purpose is to engage in activities commonly associated with a dwelling place. For example, the record shows that they eat, sleep, bathe, and watch television there. On the other hand, if "residential" refers to an intention to live in a home for more than a temporary sojourn or transient visit, even defendants' *own* use of the property, as well as their rental use, is not "residential." Because of the different possible meanings of "residential," this portion of the restrictive covenant is ambiguous.

We next consider whether defendants' rental activity constitutes a "commercial enterprise." "Commercial" means, as relevant, "occupied with or engaged in commerce * * *[;] related to or dealing with commerce." *Id.* at 456. "Commerce," in turn, means "the exchange or buying and selling of commodities esp. on a large scale"; but it also can mean "dealings of any kind." *Ibid.* "Commercial" also can mean "having profit as the primary aim." *Ibid.* "Enterprise"

can mean "VENTURE, UNDERTAKING, [OR] PROJECT"; "a business organization: FIRM [OR] COMPANY"; or, simply, "any systematic purposeful activity." *Id.* at 757.

If a "commercial enterprise" is any undertaking or systematic purposeful activity involving business dealings of any kind, then the covenant covers defendants' use of the property, because the short-term vacation rentals systematically and purposefully generate revenue from arm's-length transactions. On the other hand, if a "commercial enterprise" requires a business organization that has profit as its primary aim, then the covenant does not cover defendants' use, because the facts shown do not demonstrate that defendants are a business organization or that they have profit as their primary aim (as would be true, for example, of a bed-and-breakfast business). Because of the different possible meanings of "commercial enterprise," this portion of the restrictive covenant also is ambiguous.

■　　Additionally, we look at the context of the disputed provision. It is one of nine provisions in the covenants. One provision prohibits keeping livestock on the premises, while the others relate to building and structural standards. None of the other provisions relates to short-term rentals or elaborates on any portion of the disputed provision. Thus, the provision remains ambiguous after an analysis of its text in context.

It may be that, in a case involving a differently-worded covenant, the facts shown here would be dispositive. Under the text and context of *this* covenant, however, the activities involving defendants' property, taken collectively, are neither clearly permitted nor clearly forbidden.

■　　Because the contractual provision at issue is ambiguous, we proceed to the second of the three analytical steps that the court follows in interpreting contracts. That step is to examine extrinsic evidence of the contracting parties' intent.

"If a contract is ambiguous, the trier of fact will ascertain the intent of the parties and construe the contract consistent with the intent of the parties. Words or terms of a contract are ambiguous when they reasonably can, in context,

be given more than one meaning." *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 347-48, 876 P2d 761 (1994) (citations omitted).

*See also* ORS 41.740 (extrinsic evidence is admissible "to explain an ambiguity" in a contract). The intention of the parties to an instrument is to be pursued if possible. ORS 42.240. In this connection, the parties' practical construction of an agreement may hint at their intention. *See Tarlow v. Arntson*, 264 Or 294, 300, 505 P2d 338 (1973) (when instrument was ambiguous, court examined what parties did under it; "How the original parties and their successors conducted themselves in relation to the agreement is instructive in our determination of what must have been intended.").

In the present case, at least one other house in the same subdivision has been used as a short-term vacation rental. The evidence also indicates that property in neighboring subdivisions, covered by identical covenants, has been or currently is being used as vacation rental property. However, the evidence is so sketchy that it cannot fairly be said that the original contracting parties or their successors have given a "practical construction" that resolves the ambiguity. The parties agree that no additional evidence of the contracting parties' intent is available beyond what is in the summary judgment record. We therefore conclude that the provision remains ambiguous after the second step of the analysis.

■ Because the first two analytical steps have not resolved the ambiguity, we must reach the third and final analytical step. If the meaning of a contractual provision remains ambiguous after the first two steps have been followed, the court relies on appropriate maxims of construction. The maxim that defendants urge us to apply is the

"familiar rule of law that restrictive covenants are to be construed most strictly against the covenant; and unless the use complained of is plainly within the provisions of the covenant it will not be restrained." *Scott Co. v. Roman Catholic Archbishop*, 83 Or 97, 105, 163 P 88 (1917) (citations omitted).

*See also Alloway v. Moyer*, 275 Or 397, 400-01, 550 P2d 1379 (1976) (first an effort is made to gather the intent of the parties from the wording used, read in the light of the circumstances of its formulation; if a restrictive covenant is ambiguous, strict construction against the restriction operates).

This court has reiterated that maxim several times,[1] but questioned it in *Swaggerty v. Petersen*, 280 Or 739, 744, 572 P2d 1309 (1977):

> "We are doubtful * * * whether we should continue to [recognize and apply the rule that, because of the public policy favoring untrammeled land use, a restrictive covenant is construed against the covenant]. Public policy, as expressed in recent legislation, no longer favors 'untrammeled land use,' but requires the careful public regulation of the use of all of the land within the state. *See especially*, ORS chapter 197."

Plaintiffs urge us to follow that logic and to retract the maxim of strict construction of restrictive covenants. Their argument is, in essence, that this court recognized in *Swaggerty* that surrounding statutory law had altered an essential legal element that was assumed in the prior cases. *See G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988) (the foregoing circumstance may be a premise for reconsidering a common-law rule). We are not persuaded.

In *Swaggerty*, the court did not need to "inquire whether this legislative expression of public land use policy requires a new approach to the construction of private restrictions on the use of land." 280 Or at 744. That was so because the defendant's proposed construction of the restrictive covenant was "not reasonable" in that it was "contrary to [an] express provision[ ]" elsewhere in the covenants. *Ibid.* Accordingly, the quoted discussion of public policy (assuming *arguendo* its accuracy) was *dictum*.

---

[1] *See, e.g., Johnson v. Campbell*, 259 Or 444, 447, 487 P2d 69 (1971); *Aldridge v. Saxey*, 242 Or 238, 242, 409 P2d 184 (1965); *Smoke v. Palumbo*, 234 Or 50, 52, 379 P2d 1007 (1963); *Rodgers et ux v. Reimann et ux*, 227 Or 62, 65, 361 P2d 101 (1961); *Schmitt et ux v. Culhane et al*, 223 Or 130, 132, 354 P2d 75 (1960); *Hall v. Risley and Heikkila*, 188 Or 69, 87-88, 213 P2d 818 (1950); *Heitkemper v. Schmeer*, 146 Or 304, 327, 29 P2d 540, 30 P2d 1119 (1934); *Crawford et al. v. Senosky et al.*, 128 Or 229, 232, 274 P 306 (1929); *Grussi v. Eighth Ch. of Christ, Scientist*, 116 Or 336, 342, 241 P 66 (1925).

■ We are not convinced by the *dictum* of *Swaggerty* to dilute the maxim of strict construction of restrictive covenants. In the absence of clarity in wording and in the absence of an understanding of the parties' actual intent, this maxim serves at least four purposes: to avoid imposing a restriction on the buyer of property that the buyer cannot reasonably be expected to know, to allow full use of property, *see Aldridge v. Saxey*, 242 Or 238, 242, 409 P2d 184 (1956) (public policy favors untrammeled land use), to reduce litigation by increasing certainty, and to promote uniform interpretation of like covenants. Additionally, this court has stated that, "when property rights are at stake, consistency, that is, adherence to precedent, is a * * * virtue" because of the need for certainty. *Dorsey et ux v. Tisby et ux*, 192 Or 163, 180, 234 P2d 557 (1951).[2]

■ We conclude that the maxim calling for strict construction of restrictive covenants remains applicable. In this case, its application means that defendants' rental of the property is permissible, because that use is not "plainly within the provisions of the covenant." *See Scott Co.*, 83 Or at 105 (setting forth maxim). Therefore, defendants are entitled to a judgment in their favor.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to that court for entry of judgment for defendants.

---

[2] The maxim that restrictive covenants are to be construed strictly is the majority rule. *See, e.g.*, Richard R. Powell and Patrick J. Rohan, 5 *Powell on Real Property* ¶ 674 (1994) (collecting cases); Emily S. Bernheim, 3 *Tiffany Real Property* § 858, at 474 (1939), & at 306-10 (Supp 1996) (same).