Argued and submitted October 14, 1999, affirmed April 5, 2000

## Jovita ALPHONSE,
*Appellant,*

*v.*

## CNF SERVICE COMPANY, INC.,
an Oregon corporation;
Leland James Service Corporation,
an Oregon corporation,
*Respondents.*

(9710-08406; CA A104389)

998 P2d 758

Michael A. Cox argued the cause and filed the briefs for appellant.

William H. Walters argued the cause for respondents. With him on the brief were Maureen R. Sloane and Miller, Nash, Wiener, Hager & Carlsen.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

The trial court ruled, on summary judgment, that defendant[1] had offered a severance package to only those employees whose employment was terminated. Because defendant had not terminated plaintiff's employment but had instead offered her a different position within the company, the court entered judgment in defendant's favor. We affirm.

Because this case arises on defendant's summary judgment motion, we state the facts in the light most favorable to plaintiff. *See Olson v. F & D Publishing Co., Inc.,* 160 Or App 582, 584, 982 P2d 556 (1999). Defendant employed plaintiff in its workers' compensation claims department. In 1995, defendant decided to have another company perform the work that its workers' compensation department was then performing. Defendant offered its employees in the workers' compensation department a severance package to encourage them to stay during the transition. It set out the terms of that offer in a July 1, 1996, memorandum:

> "As you have been advised, [defendant] will begin reductions in the Casualty Claims and Workers' Compensation Departments in 1997. All recent and future claims are being processed by a third-party administrator. We expect that during 1997 work will begin to decrease as claims are closed, and therefore some positions will phase out before others. We will keep you apprised of developments.
>
> "To complete this transition successfully, the company will rely upon your active participation. To encourage you to remain with us during the transition, [defendant] offers the following severance package:
>
> • Severance pay equal to one week's pay plus an additional week's pay for each full year of service, based on your anniversary date, to a maximum of 13 weeks of pay.

---

[1] There are two defendants in this case, Leland James Service Company and its successor corporation, CNF Service Company. CNF assumed Leland James's contractual obligations midway through the events that gave rise to this action. We use the term defendant to refer to both Leland James and its successor CNF.

- A stay-pay bonus equal to 25% of your annual base salary.

- The Company will pay the COBRA continuation premium for your group insurance for the number of weeks equal to the number of weeks for which you receive severance pay, to a maximum of 13 weeks.

- Out-placement services will be made available, including job search and resume assistance, during the last sixty days of employment, upon written notification of job termination, and for up to thirty days thereafter, with a maximum of three months of services provided.

- The Company will pay for group computer classes, including Microsoft Windows, Excel, and Word.

"To receive this package, you will be required to meet the following conditions:

- You will remain employed until the termination date specified by the Company. A sixty-day written notice will be issued prior to any job termination.

- You must fulfill the normal expectations of job performance including attendance and punctuality, successfully meeting established production quality and standards, completion of all assigned tasks and responsibilities until the end of the designated employment period, and compliance with all [defendant's] policies and procedures.

"There will be some positions that remain at the end of the downsizing period. All departmental employees on staff at that time will be considered for those positions, based on job performance, as outlined above. In addition, you may wish to apply for positions in other departments as they become available."

On April 2, 1997, defendant distributed a second notice to the employees in the workers' compensation department. That notice stated: "As indicated in [the July 1, 1996 memorandum], a 60-day written notice would be issued prior to any job termination. This letter serves as the 60-day written notice." The notice also stated that "[t]hose of you whose positions are being eliminated will be receiving letters which notify you of your anticipated release date and outline your severance package."

On April 3, 1997, the day after receiving the notice, plaintiff met with her supervisor. He told her that defendant wanted her to stay on as an employee but in a new position. Plaintiff responded that she was shocked that defendant asked her to stay with the company. As she later explained, "I had other plans in the works, I've had other plans in the works for the past year, and so this came as an absolute shock to me[.]" Plaintiff told her supervisor that she would think about the offer over the weekend and then let him know her decision.

Although plaintiff did not know the specific position that defendant had in mind for her, she chose not to accept it. When asked why she turned down the offer of continuing employment, plaintiff responded, "I didn't consider it continuing employment." When asked if she had any other reasons for not accepting it, she explained:

> "I considered it a new position for the department. I also, again, had other plans that I was actively pursuing and working for the past year. I had put my life on hold for a little over two years waiting for the transition to take place, and I had developed my skills, and in order to be ready for that transition and, so, there was some reasons why I did not accept the new position with the company, whatever that might have been."

Plaintiff later added: "In my mind, I was not going to be offered a position or new employment with the company, and I had developed skills that I felt were beyond staying with [defendant]." Plaintiff accordingly rejected the offer of a new position but continued working for defendant until May 30, 1997. In June 1997, plaintiff began work for a new employer as a workers' compensation claims specialist.

Defendant did not pay plaintiff either severance pay or a stay-pay bonus when she left the company. On October 24, 1997, plaintiff filed a complaint alleging that she had "satisfied all the conditions necessary to entitle her to receive the severance pay and the stay-pay bonus set forth in the July 1, 1996 memo," but that defendant had not paid her either of those benefits. After court-mandated arbitration,[2]

---

[2] The arbitrator entered an award in plaintiff's favor. It ruled that plaintiff was entitled to the stay-pay bonus because that "aspect of the [severance] package can

the case returned to the trial court, *see* ORS 36.425(2), and defendant moved for summary judgment. The trial court granted defendant's motion. It concluded "that the contract at issue is unambiguous and the only reasonable interpretation of the contract at issue is that an employee, like [plaintiff], whose position is outsourced is not entitled to severance pay or the stay pay bonus if employment with defendants is not terminated due to an offer of continuing employment in a new position." The trial court also ruled that plaintiff received an offer of continuing employment sufficient to preclude her from being entitled to severance pay or the stay-pay bonus. The court accordingly entered judgment in defendant's favor.

■   On appeal, plaintiff acknowledges, as the contract provides, that the benefits promised by defendant's July 1, 1996, offer were available only if her job was terminated. She argues, however, that the phrase "job termination" is ambiguous for two reasons. She argues initially that the meaning of the phrase "job termination" will vary depending on the benefit that is promised. Plaintiff reasons: " 'Job termination' in the context of a stay pay bonus refers to termination of one's position while 'job termination' in the context of severance pay refers to termination of one's employment." Plaintiff argues that because there is no dispute that her position was terminated, she is entitled to the stay-pay bonus even if she is not entitled to severance pay. At the least, she contends, that is one plausible way of interpreting the July 1, 1996, offer.[3]

■   Plaintiff's first argument assumes that defendant's offer permits an employee to receive a stay-pay bonus but not severance pay. The terms of the offer negate that assumption, however. The offer consists of two parts. First, it defines the contents of a "severance package" that defendant is offering its employees. That package includes severance pay, a

reasonably be understood to apply even if the employee declined to accept employment." The arbitrator concluded, however, that plaintiff was not entitled to severance pay.

[3] The question whether a contract is ambiguous presents a question of law for the court. *See Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997); *Contractors, Inc. v. Jacobsen*, 139 Or App 366, 370-71, 911 P2d 1268, *rev den* 323 Or 691 (1996).

stay-pay bonus, a COBRA continuation premium, and services to help defendant's terminated employees find new jobs. Second, it sets out the conditions an employee must meet to receive the severance package. It provides: "To receive this *package*, you will be required to meet the following conditions[.]" (Emphasis added.)

Under the terms of the offer, plaintiff was entitled to receive the entire severance package or nothing. She was not entitled to receive one part of the package but not another. Plaintiff acknowledged that understanding in her deposition.[4] Because defendant offered a single benefit package, the conditions for receiving that package cannot vary with the individual benefits the package includes. The unambiguous terms of defendant's offer are inconsistent with the assumption that underlies plaintiff's first argument.

Plaintiff advances a second argument. She argues that even if her right to receive the entire severance package is conditioned on her job being terminated, the phrase "job termination" is itself ambiguous. She reasons that the phrase "job termination" could refer to either termination of employment or termination of an employee's position. It follows, she concludes, that the offer contained an ambiguity that made summary judgment inappropriate.

Plaintiff's second argument is also at odds with the terms of defendant's offer. Defendant's offer specifies the two conditions an employee must meet in order to receive the severance package. The first condition states: "You will remain *employed* until the termination date specified by the Company. A sixty-day written notice will be issued prior to any job termination." (Emphasis added.) The terms of the offer imply that what ends on the termination date is the worker's employment, not simply the position. Put another way, after the termination date, the employee will no longer be employed.

---

[1] In her deposition, plaintiff was asked whether she understood the benefits to be "divided into two different packages, that those people who stayed got the stay-pay bonus, whether they left or not, and that those people who severed their employment got the severance package ☆ ☆ ☆" or whether it was all one package. Plaintiff responded, "It's all one package."

The benefits included in the severance package confirm that a worker's employment must be terminated to receive the package. *See Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (examining the text of a disputed contract provision in the context of the document as a whole to determine its meaning). As discussed above, the benefits defendant offered its employees were offered as a single package. They included severance pay, a stay-pay bonus, COBRA continuation premiums,[5] services to help out-of-work employees find new jobs, and group computer classes. Not only does the term "severance package" imply the termination of employment, but the inclusion of severance pay, COBRA continuation premiums, and "out-placement services" in a single "severance package" demonstrates a clear intent to benefit only those employees whose employment is terminated. There would be no need to provide those benefits to a worker who continued to be employed in a new position within the company.[6] *See Yogman*, 325 Or at 361. We agree with the trial court that the only reasonable interpretation of the offer, read as a whole, is that an employee "whose position is outsourced is not entitled to severance pay or the stay pay bonus if employment with defendants is not terminated due to an offer of continuing employment in a new position."

■    Plaintiff advances a final argument. She contends that even if the severance package were only available to employees whose employment was terminated, defendant did not make "a bona fide offer of continuing employment." The difficulty, however, with plaintiff's argument is that she rejected defendant's offer of continuing employment without ever knowing what it entailed. Her own testimony makes clear that the nature of the new position was irrelevant to her

---

[5] COBRA is an acronym for the Consolidated Omnibus Budget Reconciliation Act of 1985. *See* 29 USC § 1163, 100 Stat 82 (1986). The Act permits a member of an employer's group health plan to elect continuing coverage if, among other things, the employer terminates the member's employment. *See Geissal v. Moore Medical Corp.*, 524 US 74, 77-80, 118 S Ct 1869, 141 L Ed 2d 64 (1998).

[6] Indeed, the offer specifies that "[o]ut-placement services" to help employees find new jobs will be available "during the last sixty days of employment, upon written notification of *job termination*, and for up to thirty days thereafter." (Emphasis added.) That portion of the offer confirms that the phrase "job termination" refers to workers whose employment is terminated; it does not refer to workers who are reassigned to another position within the company.

decision to leave. As she explained, "whatever [the new position] might have been," she had no intention of staying with the company. Rather, she was pursuing other plans when defendant asked her to stay on in a new position. We agree with the trial court that, on this record, defendant's offer of continuing employment was sufficient. Because defendant did not terminate plaintiff's employment, the trial court correctly held that she was not entitled to the single severance package defendant offered.

Affirmed.