Argued and submitted September 7, 2000, affirmed February 21, 2001

# Holly MILLER,
*Appellant,*

*v.*

# COLDWELL BANKER
# MOUNTAIN WEST REAL ESTATE, INC.,
an Oregon corporation,
*Respondent.*

## (97C-11915; CA A106673)

19 P3d 948

W. Eugene Hallman argued the cause for appellant. With him on the briefs were Mark E. Griffin, Griffin McCandlish, David B. Wiles, and Ashcroft Wiles LLP.

Sarah R. Troutt argued the cause for respondent. With her on the brief was Michael C. McClinton.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

Plaintiff initiated this action against defendant Coldwell Banker Mountain West Real Estate, Inc. (Coldwell), for breach of a contract concerning real estate commissions. Coldwell sought summary judgment, and the trial court granted its motion. Plaintiff appeals. Viewing the facts and all reasonable inferences in the light most favorable to plaintiff, we conclude that there are no genuine issues of material fact and that Coldwell is entitled to judgment as a matter of law.[1] Consequently, we affirm.

Coldwell is engaged in the business of selling real estate and has more than 100 residential and commercial sales associates who work in Salem and Keizer, Oregon. In September 1993, Coldwell hired plaintiff as a residential real estate salesperson. At that time, the parties entered into an Independent Contractor Agreement (agreement). The agreement specified, among other things, the salesperson's and the broker's obligations and authority, how commissions were to be distributed, and what would happen upon termination of the parties' association. In her capacity as a salesperson, plaintiff was responsible for soliciting and obtaining real estate listings on Coldwell's behalf. During the summer of 1995, after plaintiff assisted with the transfer of the real estate business of Sandstrum Homes, Inc. (Sandstrum), from another agency to Coldwell, Sandstrum became plaintiff's primary client. In October 1995, for reasons not relevant to this appeal, Coldwell removed plaintiff from the Sandstrum account, and in December 1995, Coldwell and plaintiff terminated their association. Plaintiff later received commissions for all of her sales that were in escrow or had then-pending negotiations.

Plaintiff filed a complaint against Coldwell, alleging that she was entitled to additional "unpaid" and "future" commissions relating to the Sandstrum account. Some of the Sandstrum property listing agreements for which plaintiff

---

[1] *See* ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

sought commissions had been signed before she left, and others were signed weeks and months later. She claimed entitlement to those commissions because Coldwell initially obtained the Sandstrum account as a result of her efforts. Additionally, plaintiff claimed she deserved those commissions because her extensive services to that account included, among other things, assembling a job team, formulating an extensive marketing plan, and obtaining numerous listing agreements. Coldwell successfully moved for summary judgment on the ground that a paragraph of the parties' written agreement governing what would happen upon termination of their association unambiguously did not provide for plaintiff to receive the disputed commissions.

On appeal, plaintiff challenges the trial court's ruling that the agreement was unambiguous and argues that, as a result, the agreement's meaning cannot be resolved on summary judgment. In support of the existence of an ambiguity, plaintiff relies on a fee schedule for commissions incorporated into the agreement and an alleged oral agreement between the parties about the Sandstrum account in particular. In response, Coldwell renews the arguments that it made below.

■ The pertinent principles that we follow in construing contracts are well settled. *See Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). The first step is to examine the text of the disputed provision in the context of the document as a whole. In the absence of an ambiguity, the analysis ends, and we determine the meaning of the contract as a matter of law. *Id.* A contract provision is ambiguous if it reasonably can be given more than one meaning. *Id.* at 363-64. If a disputed contractual provision is ambiguous, we may resolve the contract's meaning by examining extrinsic evidence of the contracting parties' intent and, if necessary, resorting to applicable maxims of construction. *Id.* at 363-65.

■ With those principles in mind, we turn to the language of the parties' written agreement. Paragraph 6 of the agreement pertains to commissions generally. With regard to how commissions are earned and paid, it provides:

"In each transaction in which services of Salesperson result in the earning of a commission, the commission, when

received in cash by Broker, shall be divided between Broker and Salesperson according to Broker's commission schedule in effect at the time the commission was earned. A commission is not earned until the sale between purchaser and seller is finally closed, and Broker receives the agreed commission in cash. All commissions shall be paid to Broker as required by law, and Broker shall divide the commission [and] pay to Salesperson the share to which he or she is entitled as soon as practicable after receipt of commission. * * *"[2]

Paragraph 11 of the agreement expressly addresses how the parties may terminate their association and what happens upon termination, including what commissions will be paid to plaintiff. That paragraph provides, in relevant part:

"This agreement may be terminated by either party at any time upon giving notice to the other, or may be terminated by the Broker returning the Salesperson's license to the Real Estate Agency.

"In the event of termination and the Salesperson's association with any other broker in the same market area as Coldwell Banker Mountain West Real Estate, Inc., within one year of termination, the parties agree to the following:

"(a) All of the Salesperson's listings shall remain with the Broker for reassignment to another salesperson selected by the Broker.

"(b) All commissions in escrow will be divided between the Broker and the Salesperson on a 50/50 split, regardless of the percentage of split previously agreed to by the parties prior to termination. * * *"[3]

Paragraph 6 and paragraph 11, alone and in combination, are plain and unambiguous. Paragraph 6 pertains to how commissions are earned and paid during the term of the

---

[2] The remainder of paragraph 6 pertains to resolving disputes regarding the division of commissions between salespersons. The substance of this dispute is primarily between a salesperson and a broker; therefore, that portion of paragraph 6 does not apply here.

[3] The remainder of paragraph 11 allows a salesperson to receive additional commissions, in the broker's discretion, with respect to transactions that have negotiations pending at the time of termination. The commissions plaintiff claims entitlement to do not implicate that portion of paragraph 11; therefore, we do not quote it or discuss it further.

agreement—*i.e.*, while plaintiff is a salesperson in Coldwell's employ. Paragraph 11 pertains to how and on what terms the parties may terminate their relationship. Under subparagraph (a), all of plaintiff's listings, including the ones for Sandstrum properties, remain with Coldwell. Under subparagraph (b), plaintiff is entitled to 50 percent of the commissions in escrow, regardless of the percentage previously agreed to by the parties prior to termination. Thus, by its express terms, paragraph 11 controls what commissions plaintiff is entitled to upon termination of the agreement, which is the circumstance that this case presents. Paragraph 6 simply does not apply. There is no ambiguity.

Plaintiff, nevertheless, suggests two additional reasons why the parties' agreement is ambiguous. First, she points to the fee schedule incorporated into the agreement, which provides for how commissions will be split between listing associates and selling associates. Plaintiff's argument apparently is that she should enjoy those commissions for any property for which she was ever the listing agent, even after she is no longer in Coldwell's employ. We disagree. By its terms, the schedule applies to associates who are currently acting in that capacity. Nothing in the fee schedule pertains to or qualifies the treatment of commissions for associates who have been terminated. In short, the fee schedule does not render the agreement ambiguous.

Second, plaintiff argues that she provided evidence that the parties entered into a subsequent oral agreement that allowed her to be the exclusive listing associate for the Sandstrum account and entitled her to all commissions resulting from it. Plaintiff evidently believes that such an agreement also is a basis to infer that she would be entitled to those commissions even after leaving Coldwell's employ, thus giving rise to at least an ambiguity as to whether the subsequent oral agreement or paragraph 11 controls. There are several problems with plaintiff's argument in that regard. First, it is not clear that plaintiff made and preserved that argument below, which is problematic enough, but is especially so given that her complaint pleaded only a breach of the written contract agreement. In all events, the record before us contains, at best, scant evidence of any purported later oral modification. To alter the parties' written agreement, a

later oral modification would require clear and convincing evidence that there was such an agreement, that its terms included a broader right to commissions upon termination of the parties' relationship, and that such a modification of the written contract was supported by consideration. *See Anderson v. Divito,* 138 Or App 272, 281-82, 908 P2d 315 (1995) (modification by subsequent oral agreement must be supported by consideration and demonstrated by clear and convincing evidence). On this record, even viewing the evidence most favorably to plaintiff, a factfinder could not determine that there was an enforceable oral modification. For all of those reasons, plaintiff's reliance on the purported subsequent oral modification to create an ambiguity is likewise unavailing.

In sum, we agree with the trial court that the contract is unambiguous and that the only provision specifying plaintiff's entitlement to commissions upon termination of the parties' relationship is paragraph 11 of the written agreement. Plaintiff does not dispute that she received commissions consistent with that provision. Therefore, the trial court properly granted summary judgment in Coldwell's favor.

Affirmed.