Argued and submitted July 22, reversed and remanded December 10, 2003

## CORNELIUS MANOR TRAILER COURT, INC.,
an Oregon business corporation,
*Appellant,*

*v.*

## Sam ESCH
and Jackie Esch,
*Respondents.*

### C011233CV; A118553

81 P3d 727

Kevin W. Luby argued the cause and filed the brief for appellant.

Michael J. Ross argued the cause for respondents. With him on the brief was Slater/Ross.

Before Edmonds, Presiding Judge, and Wollheim,* and Schuman, Judges.

SCHUMAN, J.

---

* Wollheim, J., *vice* Kistler, J., resigned.

## SCHUMAN, J.

Defendants rent a space for their mobile home in a facility owned by plaintiff Cornelius Manor Trailer Court. In 1992, defendants signed a rental agreement with plaintiff's predecessor that contains a term stating that defendants' rent would include several utilities, including water. The agreement also contains a term under which plaintiff "reserves the right to pass these costs to the TENANT at a later date." In 1998, plaintiff informed all of its tenants that it would begin charging for water "in lieu of a rent increase." Defendants initially paid the water bills but later stopped. Plaintiff brought this action to recover the amount of the unpaid water bills. After a trial to the court, the judge concluded that the reservation of rights in the lease did not constitute a mutual agreement allowing plaintiff unilaterally to change the water arrangements. Plaintiff appeals. We reverse.

We begin with the statutory context. In 1992, when the rental agreement was executed, ORS 90.510 (1991) provided, in part:

"(4) Every landlord who rents a space for a manufactured dwelling * * * shall provide a written agreement which shall be signed by the landlord and tenant.

"* * * * *

"(6) When a rental agreement does not specifically provide otherwise, the facility management may elect to bill a tenant separately for utility service fees and charges assessed by the utility for services provided to or for spaces in the facility."

By 1998, the legislature had amended ORS 90.510 several times. The amended version provided, in part:

"(4) Every landlord who rents a space for a manufactured dwelling * * * shall provide a written rental agreement * * * which shall be signed by the landlord and tenant and which cannot be unilaterally amended by one of the parties to the contract except by:

"(a) Mutual agreement of the parties;

"* * * * *

"(c)    Those provisions required by changes in statute or ordinance.

"* * * * *

"(8)(a)    If a written rental agreement so provides, a landlord may require a tenant to pay to the landlord a utility or service charge that has been billed by a utility or service provider to the landlord for utility or service provided directly to the tenant's dwelling unit or to a common area available to the tenant as part of the tenancy."

ORS 90.510 (1997). The gist of defendants' argument is that under those statutes, in particular the 1997 version, plaintiff cannot unilaterally decide to begin charging defendants for water without a mutual agreement and that the terms of the lease between plaintiff and defendants, including plaintiff's reservation of rights to begin charging separately for water, do not contain such an agreement. We disagree.

The parties' rental agreement contains the following provisions that are at issue here. (Strike-throughs are in the original; italicized portions represent handwritten entries in the original's fill-in-the-blanks.)

"8.    PERSONAL PROPERTY, SERVICES AND FACILITIES PROVIDED BY LANDLORD. LANDLORD will provide the following services to the TENANT'S manufactured dwelling space: Sewage disposal, water supply and electrical supply. LANDLORD further agrees to provide the following personal property, services and facilities: *Sewage/Water*[,] *garbage*[,] *Lot Rent*[.]

"LANDLORD will pay the monthly costs of the following services: *Garbage & Lot Rent*[,] *Sewage/Water*[.]

"LANDLORD reserves the right to pass these monthly costs to the TENANT at a later date.

"TENANT agrees to pay for all other services to TENANT'S space, including, but not limited to, electricity, fuel, cable television, telephone[.] [Defendants' signatures appear here].

"LANDLORD reserves the right to change these utility arrangements, including the billing procedure, with reasonable notice to TENANT. Non-essential utilities, such

as cable TV, could be discontinued if no provider were available.

"9. INDIVIDUAL METERING. LANDLORD reserves the right to bill TENANT separately for utility service fees and charges assessed by a utility for services provided to or for spaces in the Park. Any separately billed utility fees and charges shall not be considered to be included in the rent charged for the space and shall not be considered to be rent or a rent increase. The LANDLORD is not required to provide for a separate billing of fees and charges.

"* * * * *

"25. MODIFICATION OF AGREEMENT AND RULES

"A. Modification of Rental Agreement. This is a month-to-month agreement and your tenancy may terminate only for cause or upon park closure. However, other terms of this Agreement can change as explained elsewhere in this Agreement or as the result of new laws or court decisions."

In August 1998, plaintiff converted the water utility system in its mobile home park to individual metering and began billing defendants directly for the water they used. Defendants paid the bills, albeit a bit haphazardly, for about a year. In December 1999, defendants stopped paying for water. Plaintiff sued defendants for breach of contract in May 2001. Plaintiff claimed that the rental agreement required defendants to pay for water and that by refusing to do so, they had breached the agreement. Defendants claimed that the rental agreement did not require them to pay for water— on the contrary, it required plaintiff to provide water, the cost of which would be included in the rent. Defendants claimed that the terms in the rental agreement in which plaintiff "reserve[d] the right" to change the utility arrangements could not be effectively exercised by plaintiff in light of the current law. The trial court ruled that the reservation of rights in the contract was merely a declaration that those rights existed, not a mutual agreement that plaintiff could exercise the rights. The trial court dismissed plaintiff's complaint and entered judgment for defendants.

■        In interpreting a contractual provision,

> "we follow the process prescribed in *Yogman v. Parrott*, 325
> Or 358, 937 P2d 1019 (1997). First, we examine 'the text of
> the disputed provision, in the context of the document as a
> whole[, and if the meaning of] the provision is clear the
> analysis ends.' *Id*. at 361. A provision of a contract is unam-
> biguous if it is capable of only one reasonable interpreta-
> tion. *See id*. at 363-64. Second, if, but only if, an ambiguity
> exists, we 'examine extrinsic evidence of the contracting
> parties' intent.' *Id*. at 363. Finally, if the meaning of a dis-
> puted contractual provision is still ambiguous after comple-
> tion of the first two steps, we resort to appropriate maxims
> of construction. *Id*. at 364."

*Roe v. Doe,* 161 Or App 477, 487-88, 984 P2d 344 (1999), *rev
den*, 329 Or 651 (2000) (footnote omitted; alteration in origi-
nal). Here, the phrase "landlord reserves the right" appears
five times in the rental agreement. In the first instance,
plaintiff "reserves the right to increase the rent in accordance
with Oregon law." The second, third, and fourth instances are
the terms reserving plaintiff's right "to pass these monthly
[utility] costs to the TENANT at a later date"; to "change
[the] utility arrangements, including the billing procedure,
with reasonable notice to TENANT"; and to "bill TENANT
separately for utility service fees and charges assessed by a
utility for services provided to or for spaces in the Park." The
fifth instance provides that plaintiff reserves the right to
accept or reject as a tenant in the park any prospective pur-
chaser of defendants' mobile home (although this right
appears to be limited by further terms describing the reasons
for which plaintiff "shall have the right" to reject a prospec-
tive purchaser). In each instance, the phrase "reserves the
right" clearly indicates that plaintiff is agreeing to an initial
set of conditions or arrangements—the amount of rent, pay-
ing the cost of providing water, and defendants' ability to
pass occupancy of the rented space on to a purchaser of their
mobile home—but that plaintiff can change or limit these
conditions in the future.

    As the term dealing with rent increases states
explicitly, all of the reservations of rights are subject to
Oregon law. For example, if there were a provision in which a
landlord attempted to "reserve the right" to increase rent

with less than the 90-day notice required under ORS 90.600(1), it would be unenforceable, and the landlord would be subject to sanctions if it had deliberately used and attempted to enforce such an agreement. ORS 90.245. In this case, the provisions reserving plaintiff's right to change the utility arrangements by billing defendants directly for water are limited by ORS 90.510. Any changes to the terms of the rental agreement must not conflict with that law.

Defendants contend that the 1997 amendments to ORS 90.510 apply retroactively so as to govern the pre-existing rental agreement between plaintiff and defendants. We need not and do not decide the merits of that assertion, however, because, even if it is correct, defendants derive no benefit from it. There are two provisions of the 1997 amendments that are relevant to plaintiff's new policy regarding water charges. First, under ORS 90.510(4) (1997), plaintiff cannot unilaterally amend the rental agreement except under certain specified circumstances. One such circumstance is a mutual agreement. ORS 90.510(4)(a) (1997). The agreement here states that plaintiff "reserves the right to pass * * * monthly costs [of water] to the TENANT at a later date." Examining that text in the context of the agreement as a whole, the meaning is clear. *Yogman,* 325 Or at 361.

The reservation of rights provisions allow plaintiff to change certain arrangements at its discretion, for example, to raise the rent. Defendants' argument to the contrary, asserting that the terms reserving various rights were nothing more than declarations of existing rights that plaintiff had under the statutes and not a mutual agreement that plaintiff could *exercise* those rights, is simply not a plausible reading of the rental agreement. Defendants cite no authority in any case from this or any other jurisdiction (or, for that matter, from any dictionary or other source) for the proposition that a statement reserving the right to do something does not mean that the reserver retains the privilege of exercising the reserved rights. Such an interpretation would render the reservation meaningless. Under the terms of the contract, defendants agreed that, although the initial conditions were in a certain state—rent of $425 per month, water included, based on a flat, nonindividually metered rate—those conditions could change at plaintiff's discretion; that is

what plaintiff reserved the right to do. It is axiomatic that defendants' assent to the contract constitutes agreement to its terms. There was a mutual agreement.

The second provision that is relevant to plaintiff's modification of the rental agreement is ORS 90.510(8)(a) (1997), which states that, "[i]f a written rental agreement so provides," a landlord may require a tenant to pay a utility charge for service provided to the tenant's dwelling. Here, the written rental agreement does "so provide." The terms reserving plaintiff's right to "pass these monthly [utility] costs to the TENANT at a later date," to "change these utility arrangements, including the billing procedure," and to "bill TENANT separately for utility service fees and charges," allow plaintiff to require defendants to pay "a utility or service charge that has been billed by a utility or service provider to the landlord for utility or service provided directly to the tenant's dwelling unit" as ORS 90.510(8)(a) (1997) requires.

Reversed and remanded.