Argued and submitted June 13, affirmed September 28, 2011

Betty PEWTHER,
fka Betty E. Jaqua,
*Plaintiff-Appellant,*

*v.*

C CORP,
an inactive Oregon corporation;
and Charles L. Koon,
individually
*Defendants,*

*and*

Paul A. WHITAKER,
individually,
*Defendant-Respondent.*

Deschutes County Circuit Court
10CV0200AB; A146534

264 P3d 173

Melinda Thomas argued the cause for appellant. With her on the brief were John A. Berge and Bryant, Lovlien & Jarvis, P.C.

Edward Fitch argued the cause for respondent. With him on the brief was Bryant, Emerson & Fitch, LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

In this breach of contract action, the trial court granted defendant Whitaker's motion for summary judgment based on its determination that Whitaker was not liable to plaintiff under the unambiguous terms of the parties' agreement.[1] Plaintiff contends that the trial court erred in granting Whitaker's motion and subsequently dismissing him from the case. On appeal, we view the record in the light most favorable to plaintiff, the nonmoving party, to determine whether the trial court correctly ruled that there are no genuine issues of material fact and that Whitaker is entitled to judgment as a matter of law. ORCP 47 C. We conclude that the court did not err, and we therefore affirm.

The underlying facts are largely undisputed. In 1998, plaintiff sold some undeveloped industrial land in Redmond, Oregon, to defendants C CORP and Whitaker for consideration of $650,000. The property was conveyed by statutory warranty deed to C CORP and to Whitaker, each having "an undivided one-half interest, as tenants in common." C CORP provided the funds for the purchase of the property. At that time, Whitaker was an employee of C CORP, and his name was placed on the title in anticipation that he would be entitled to his interest in the property as a bonus for his work.

Simultaneously, the parties executed a written document agreeing to certain conditions that were to "survive closing." That agreement, entitled "Agreement Surviving Closing," identified the "Seller" as plaintiff, and the "Buyer" as C CORP and Whitaker, each, again, having "an undivided one-half interest as tenants in common." The provision of the agreement that is central to this dispute provided:

"In the event Buyer subsequently sells all or a portion of the Property prior to May 15, 2008, Buyer shall pay to Seller as additional consideration for the sale of the property, a sum equal to five percent (5%) of Seller's [sic] net profit on the property as reflected in Buyer's federal income

---

[1] There are three defendants in this case. The only assignment of error on appeal addresses the trial court's grant of a limited judgment against Whitaker.

tax returns for the year of sale, including any deferred profits as the result of an installment sale."[2]

In 2001, Whitaker left his employment with C CORP and conveyed his interest in the property to C CORP for nominal consideration of $1. As a result, C CORP thereafter held a one hundred percent interest in the property. In March 2004, C CORP sold the property to a third party and reported a profit of $603,547 on its federal tax return. C CORP subsequently lost all of its assets and value in the economic downturn.

Plaintiff learned about the sale of the property by C CORP in December 2009. In March 2010, she sued both C CORP and Whitaker for her five percent share of the sale profits. Whitaker moved for summary judgment on the ground that he had no obligation to plaintiff because, when the property was sold to the third party, he no longer held any interest in it. He contended, further, that any obligation he might have had to plaintiff would have arisen when he transferred his interest in the property to C CORP in 2001 for $1, and that plaintiff's claim against him was therefore barred by the six-year statute of limitations for actions on contracts. ORS 12.080.[3]

Plaintiff responded that Whitaker's conveyance of the property in 2001 did not trigger an obligation under the terms of the quoted provision of the "Agreement Surviving Closing," because that provision comes into play only on the sale of the property to a third party. Further, plaintiff asserted, because Whitaker's and C CORP's obligation under the agreement was joint, Whitaker's obligation to plaintiff continued after he no longer held an interest in the property, and the duty to pay plaintiff was triggered by C CORP's conveyance of the property in 2004. Therefore, plaintiff contended, her claim against him for breach of contract was timely.

---

[2] The parties agreed at trial that the phrase "Seller's net profit" was a scrivener's error and that the phrase should be "Buyer's net profit."

[3] ORS 12.080(1) provides:

"An action upon a contract or liability, express or implied * * * shall be commenced within six years."

The trial court agreed with Whitaker, granted Whitaker's motion for summary judgment, and entered a limited judgment dismissing him from the case. On appeal, plaintiff reiterates the arguments made at trial. She argues that the trial court erred in granting Whitaker's motion for summary judgment because the "Agreement Surviving Closing" unambiguously created joint and several liability on the part of Whitaker and C CORP that survived Whitaker's conveyance of the property in 2001, first, by virtue of its text and, second, as a matter of law. In the alternative, plaintiff argues that the agreement is ambiguous, giving rise to a factual dispute, and that summary judgment therefore was not appropriate.

We begin with plaintiff's contention that Whitaker's obligation to plaintiff under the "Agreement Surviving Closing" derived from Whitaker's joint liability under that agreement. Plaintiff asserts that the parties' deliberate choice of the term "Buyer," in the singular throughout the agreement, reflects their intention that Whitaker and C CORP were to have a joint obligation to plaintiff if and when the property sold during the 10 years prior to May 15, 2008. In support, plaintiff cites the Supreme Court's opinion in *Silvertooth v. Kelley*, 162 Or 381, 91 P2d 1112 (1939), for the proposition that, in determining whether obligations under a contract are joint or several, the intentions of the parties controls, but that an obligation undertaken by more than one person is generally presumed to be joint, and several responsibility will not arise except by words of severance.

Like the trial court, we are not persuaded. Plaintiff's reliance on *Silvertooth* is unwarranted. It is true that, in that case, the Supreme Court quoted a well-known treatise, *Williston on Contracts*, for the proposition that "when two or more persons undertake an obligation that they undertake jointly, words of severance are necessary to overcome this primary presumption." *Silvertooth*, 162 Or at 389 (quoting *Williston on Contracts* § 322 (1st ed 1920)). It is also true that, in *Silvertooth*, the court held that—based on "the facts in the instant case"—multiple defendants who had retained the services of the plaintiff were jointly liable to him. *Id.* at 390. However, the quote from *Williston* begins with the explanation that the presumption in favor of joint liability derives by

"analogy of the rule of real property that an estate granted to two persons created a joint tenancy rather than a tenancy in common." *Silvertooth*, 162 Or at 389 (quoting *Williston on Contracts* § 322). Here, that analogy does not apply: the agreement between plaintiff and defendants expressly states that they are tenants in common.

Further, and more significantly, *Silvertooth* has nothing to say about a situation such as the one in the present case where one of the supposedly jointly liable obligors has sold his entire interest in the source of the obligation to the other obligor. Even assuming the plausibility of plaintiff's assertion that the parties deliberately chose the term "buyer," in the singular, so as to encompass both Whitaker and C CORP and to reflect their joint obligation at the time the agreement was executed, and even presuming that *Silvertooth* applies and there was a joint obligation at the time the parties executed the agreement, *see id.* at 389-90, any obligation on Whitaker's part ended when Whitaker no longer owned an interest in the property. The agreement placed no restriction on the individual owners' ability to convey the property to each other. Plaintiff does not dispute that, under the deed and the agreement, Whitaker and C CORP were free to separately alienate their interests, including selling the property to each other. Plaintiff further concedes that the sale by Whitaker of his interest to C CORP did not trigger Whitaker's obligation under the agreement, because it was not a sale to a third party.[4] By the time of C CORP's third-party sale, which is the only sale that plaintiff asserts triggered the obligation to share profits, Whitaker no longer had an ownership interest in the property. He no longer held "an undivided one-half interest" in the property and was no longer a "buyer" within the meaning of the agreement. He did not sell the property, did not share in the net profits from the sale, and reported no profit on his federal tax return, all of the events necessary to trigger an obligation under the agreement. Whitaker had nothing to do with the transaction. Plaintiff does not suggest, and we cannot imagine, any reason why the parties would contemplate that Whitaker would

---

[4] Whitaker, on the other hand, does not so concede, and asserts that the 2001 conveyance to C CORP triggered Whitaker's obligation and that the statute of limitations has run on any claim based on that conveyance.

be obligated to pay plaintiff a percentage of a profit on the sale of property even after Whitaker had no right to share in that profit. No such obligation is plausibly reflected in the text of the agreement. We accordingly conclude that the trial court did not err in granting Whitaker's motion for summary judgment and dismissing him from the case. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (if contractual provision has only one plausible meaning, no further analysis is necessary).

Affirmed.