SHORR, J.
*333 Tri-County Metropolitan Transportation District of Oregon (TriMet) petitions for judicial review of a final order of the Employment Relations Board (ERB) in favor of Amalgamated Transit Union, Division 757 (ATU). In that order, ERB concluded that TriMet had violated ORS 243.672(1)(g), which establishes that a public employer commits an unfair labor practice if it violates an agreement to arbitrate, when it refused to arbitrate a grievance concerning TriMet's decision to enter into contracts with nonunion shuttlebus operators. We review ERB's findings *52 of fact for substantial evidence and its conclusions for legal error. Portland Fire Fighters' Assn. v. City of Portland , 181 Or. App. 85, 87, 45 P.3d 162 (2002) ; ORS 183.482(8)(a). For the reasons explained below, we conclude that ERB did not err. Accordingly, we affirm.
Petitioner does not contend before us that ERB's order is unsupported by substantial evidence. Rather, petitioner contends that ERB legally erred in construing the relevant contract. Because ERB's findings are supported by substantial evidence, we take the following facts from ERB's order.
TriMet is a public entity that operates public bus and rail services in the Portland metropolitan area. TriMet employees, including its bus operators, are represented by ATU. The relationship between TriMet and ATU is governed by a collective bargaining agreement, known as the Working Wage Agreement (WWA). The WWA establishes TriMet's obligations to its employees and includes procedures for the filing of grievances by employees or ATU for alleged violations of those obligations.
In 1998, TriMet began to receive and administer Job Access and Rural Commute (JARC) grants that are provided by the Federal Transit Administration (FTA). JARC grants are intended to provide commuting services for people living in urban areas who commute to underserved rural or suburban areas for work. In the circumstances at issue here, the FTA provides the grant money directly to TriMet, and then TriMet oversees and administers a competitive *334 process of awarding the grant money to subrecipients-typically nonprofit organizations-to run shuttlebuses on routes that are not part of TriMet's "fixed route" services. TriMet enters into contracts with JARC grant subrecipients, under which the subrecipients agree to provide certain services under specified conditions and to allow for oversight and auditing by TriMet. In addition to administering the JARC grants, TriMet is occasionally required to make "in-kind" contributions to JARC-funded projects, which may include but are not limited to contributions directly to JARC grant subrecipients.
Starting in 2014, TriMet contracted with Ride Connection, a nonprofit shuttlebus operator, to run certain bus lines in exchange for JARC grant funds. Ride Connection bus operators are not members of ATU. In 2015, ATU filed the grievance that is the basis for this appeal (the shuttle grievance). The amended shuttle grievance included the allegation that TriMet's contract with Ride Connection violated Article 2, section 1, paragraph 9 of the WWA-also known as the "lines of the district" provision-which provides that "all vehicles run on the lines of the District shall be run by Operators should they be operated," with limited categorical exceptions. In that context, "operators" refers to ATU members as opposed to nonunion workers such as Ride Connection employees. The grievance form used by ATU described the dispute as follows:
"TriMet has entered into [a] partnership with the Ride Connection to create [a] bus service. These routes [were] funded in partnership with TriMet. These routes should be offered to TriMet ATU operators as described in our working wage agreement."
The grievance requested as relief that TriMet "allow TriMet employees to service and maintain" the JARC bus routes.
ATU requested a hearing under the grievance provision of the WWA, which reads as follows:
"It is hereby agreed that the properly accredited officers of the District shall meet with the properly accredited officers of the Union on all grievances relating to any alleged violation of any provision of this Agreement[.] *** All such grievances when filed by the Union or an employee shall be *335 processed through the procedures set out in Sections 3 and 4 of this article."
Section 3 of the WWA provides a multistep process, ending with binding arbitration, that governs the filing and processing of grievances. At each step prior to arbitration, ATU and TriMet will attempt to resolve the grievance without arbitration, but at no point is TriMet authorized to unilaterally reject a grievance or refuse to proceed to the next step if the parties cannot resolve a grievance.
*53 If the parties cannot resolve a grievance between themselves, binding arbitration is the mandatory final step in the grievance process.
TriMet refused to process the shuttle grievance or participate in arbitration, explaining that the Ride Connection contract did not implicate the WWA because TriMet was merely passing federal JARC grant funds to Ride Connection rather than entering into an employer-employee relationship. In response, ATU filed a claim with ERB alleging that TriMet's refusal to process the grievance was an unfair labor practice. The complaint was first reviewed by an administrative law judge (ALJ), who issued a recommended order concluding that TriMet's refusal to arbitrate constituted a violation of ORS 243.672(1)(g), which, as noted, provides that it is an unfair labor practice for a public employer to violate an agreement to arbitrate.[1] TriMet objected to the recommended order. ERB took review and held oral argument. Ultimately, ERB ruled that the ALJ's recommended rulings were correct and entered a final order to that effect. ERB explained its decision as follows:
"In light of the arbitration clause's clearly broad scope, and the absence of any applicable exclusion, the [WWA] is unambiguous that grievances alleging violations of the 'Lines of the District' provision are arbitrable. Generally, *336 when express contract language is unambiguous, our analysis ends, and we do not review extrinsic evidence to interpret the contract."
Despite that general conclusion, ERB later considered the extrinsic evidence offered by TriMet but concluded that the evidence was relevant only to the meaning and scope of the "lines of the district" provision and not the question of whether the shuttle grievance was arbitrable.
On appeal, TriMet assigns error to ERB's ruling. The decisive issue is whether the arbitration provision in the WWA compels TriMet to arbitrate the shuttle grievance. As we understand TriMet's argument on appeal, it acknowledges that, under the grievance provision of the WWA, it has to arbitrate "any alleged violation of any provision" of the WWA. TriMet contends, however, that the alleged violation of the WWA's "lines of the district provision" in this case is not a dispute that arises under the WWA.
Collective bargaining agreements-like the WWA in this case-"generally are interpreted in the same manner as are other contracts." OUS v. OPEU , 185 Or. App. 506, 512, 60 P.3d 567 (2002). First, the court must examine the text of the disputed provision in the context of the agreement as a whole. Id . (citing Yogman v. Parrott , 325 Or. 358, 361, 937 P.2d 1019 (1997) ). At the first step, the court also may consider evidence of "the circumstances underlying the formation of the contract." Batzer Construction, Inc. v. Boyer , 204 Or. App. 309, 317, 129 P.3d 773, rev. den. , 341 Or. 366, 143 P.3d 239 (2006). If the provision is unambiguous, no further analysis is necessary or appropriate, and the court must "give the appropriate effect to the parties' intentions." Industra/Matrix Joint Venture v. Pope & Talbot , 341 Or. 321, 332, 142 P.3d 1044 (2006) (citing Yogman , 325 Or. at 361, 937 P.2d 1019 ). A provision is ambiguous only if it is reasonably susceptible to more than one plausible interpretation. Portland Fire Fighters' Assn. , 181 Or. App. at 91, 45 P.3d 162.
As described, the arbitration provision in the WWA broadly requires TriMet to arbitrate with ATU on "all grievances relating to any alleged violation of any provision of this Agreement." (Emphases added.) The WWA additionally provides that all grievances "shall be processed through the procedures" set out in the WWA that provide guidelines for *337 arbitration if the parties are unable to otherwise resolve a grievance. The WWA does not include language authorizing TriMet to unilaterally refuse arbitration and does not make the right to arbitration contingent on *54 ATU filing a grievance that is certain or even likely to succeed on the merits. To the contrary, the WWA obligates TriMet to arbitrate with ATU over "any alleged violation" of the agreement so long as ATU complies with the requisite procedures set forth in the WWA. (Emphasis added.) In short, the pertinent language in this case is unambiguous; the WWA clearly provides that TriMet will arbitrate all grievances alleging a violation of the WWA that cannot be resolved by the parties themselves, subject only to limited categorical exclusions not applicable to this case.
Based on our analysis of the text of the arbitration provision in the context of the WWA as a whole, we conclude that ERB did not err when it ruled that TriMet had committed an unfair labor practice in violation of ORS 243.672(1)(g) by refusing to arbitrate the shuttle grievance. ATU's grievance alleged that TriMet had violated the "lines of the district" provision of the WWA by contracting with Ride Connection, which does not employ ATU members as operators. The "lines of the district" provision is a substantive provision of the WWA, under which "all vehicles" on the "lines of the district" must be run by ATU-member operators. The unambiguous language of the arbitration provision requires TriMet to submit to binding arbitration when, as here, a grievance relates to "any alleged violation of any provision" of the WWA so long as one of the narrowly defined exclusions does not apply. Cf. Portland Police Assn. v. City of Portland , 248 Or. App. 109, 114, 273 P.3d 192 (2012) (concluding that a provision of a collective bargaining agreement providing that "any disagreement" over wages "shall be subject to [arbitration]" unambiguously applied to a grievance over a change in the calculation of pension benefits). Even if it was likely or certain from the evidence in the record that TriMet had not violated the WWA for the reasons alleged by ATU in its grievance, TriMet was nevertheless required to process the shuttle grievance and engage in binding arbitration with ATU. At least in this particular context, it is the role of the arbitrator, not ERB or this court on appeal *338 from an ERB order, to determine whether ATU's grievance is meritorious.[2]
TriMet additionally contends that ERB erred by failing to consider extrinsic evidence of the circumstances underlying the formation of the WWA-and specifically the "lines of the district" provision-before determining whether the shuttle dispute was subject to arbitration. As noted, courts may consider extrinsic evidence at the first step of contract analysis to the extent that it explains the circumstances under which the agreement was made and can place the judge in the position of the parties whose language is being interpreted. Milne v. Milne Construction Co. , 207 Or. App. 382, 389, 142 P.3d 475, rev. den. , 342 Or. 253, 149 P.3d 1212 (2006) (citing Batzer Construction, Inc. , 204 Or. App. at 317, 129 P.3d 773 ). But TriMet's argument that ERB erred in its consideration of extrinsic evidence is unavailing. Although ERB initially declined to consider extrinsic evidence, it then concluded that the extrinsic evidence presented by TriMet was not pertinent to the scope of the arbitration provision of the WWA. ERB correctly determined that TriMet's extrinsic evidence related only to the scope and meaning of the "lines of the district" provision-namely, whether the JARC contracts involved bus routes that were covered by that provision as the parties understood it-which went to the merits of the shuttle grievance and did not provide any guidance on the predicate question of whether that grievance was arbitrable. Because TriMet did not present ERB with extrinsic evidence that was pertinent to the question of whether the shuttle grievance was arbitrable, ERB did not err when it declined to rely on extrinsic evidence to conclude, as TriMet contended, that the shuttle grievance was not subject to the WWA.
Finally, TriMet argues that ERB erroneously focused its legal analysis on the "positive-assurance test," which provides that there is a presumption in favor of arbitration *55 unless ERB can say "with positive assurance" that the arbitration clause cannot be construed to cover the particular *339 grievance at issue. See Portland Fire Fighters' Assn. , 181 Or. App. at 96, 45 P.3d 162 (describing the positive-assurance test). TriMet contends that ERB erred when it applied the positive-assurance test without first determining whether the arbitration provision is ambiguous.
TriMet is correct that ERB may not rule on the meaning and applicability of an arbitration clause in a collective bargaining agreement based on its application of the positive-assurance test if ERB has not initially determined at the first level of contract analysis that the text of the clause is ambiguous. See OUS , 185 Or. App. at 512, 60 P.3d 567 ("If the text [of a disputed contract clause] is unambiguous, no further analysis is warranted."). Put differently, the positive-assurance test does not replace or reframe ERB's obligation to first consider the text of the clause in context. See Portland Fire Fighters' Assn. , 181 Or. App. at 96, 45 P.3d 162 (describing the positive-assurance test as a "relevant third-level maxim[ ] of contract construction"). At that first level, ERB should not presume that the parties intended to arbitrate or resort to maxims of contract construction. Instead, ERB should determine only whether the text is reasonably susceptible, in relevant part, to more than one plausible meaning. If it is not, "unambiguous contracts must be enforced according to their terms." Id. at 91, 45 P.3d 162 (internal quotation marks and citation omitted).
We accept the foregoing limitation on ERB's analysis of collective bargaining agreements; nevertheless, TriMet's argument in this case still does not succeed. Notwithstanding ERB's references to the positive-assurance test, ERB correctly determined at the first level of analysis that the shuttle grievance was covered by the "express" and "unambiguous" language of WWA's arbitration clause and based its ultimate ruling on that conclusion. As noted above, ERB concluded that the WWA is "unambiguous that grievances alleging violations of the 'Lines of the District' provision are arbitrable."
Although ERB invoked the positive-assurance test in its order, the invocation was not necessary to ERB's decision regarding the application of the arbitration clause of the WWA to the shuttle grievance. Indeed, there is nothing to suggest that ERB acted under a rebuttable presumption in *340 favor of arbitration. To the extent that ERB's order describes or applies the positive-assurance test in favor of arbitration, those comments are necessarily dicta in light of ERB's earlier conclusion that the arbitration provision of the WWA is unambiguous. See ORS 183.482(8) (stating that the court shall set aside, modify, or remand an order for further action "if the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action" (emphasis added)); cf. Columbia Pacific v. City of Portland , 289 Or. App. 739, 759, 412 P.3d 258 (2018) (rejecting a challenge to an agency decision in part because "the reasoning to which [the petitioner] objects is dictum ," and the agency "indicated that its holding *** did not rely on that reasoning"). Accordingly, we conclude that ERB did not commit legal error when interpreting the WWA.
To summarize, ERB did not err when it ruled that TriMet had violated ORS 243.672(1)(g) by refusing to process ATU's shuttle grievance, because the grievance is encompassed by the broad and unambiguous language of the arbitration provision of the WWA. Although ERB erroneously suggested in dicta that the positive-assurance test applied to its analysis, ERB committed no legal error when it ruled that the shuttle grievance was arbitrable.
Affirmed.

ORS 243.672 provides, in part:
"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:
"* * * * *
"(g) Violate the provisions of any written contract with respect to employment relations, including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have accepted arbitration awards as final and binding upon them."

Both before ERB and on appeal, the parties dispute whether ATU should prevail on the merits of its grievance-that is, whether TriMet in fact violated the "lines of the district" provision of the WWA by contracting with a nonunion shuttlebus operator. For the reasons described above, that question is not relevant to our resolution of this appeal, and we do not address it.